**UNITED STATES of America, Appellee,**

v.

**Alexander MONTANEZ, a/k/a Armando Bareta, Carlos Lopez, Defendant, Appellant.**

No. 95–2096.

United States Court of Appeals, First Circuit.

Heard March 6, 1996.

Decided April 24, 1996.

Evan Slavitt with whom Kelley A. Jordan–Price and Hinckley, Allen & Snyder were on brief by appointment, Boston, MA, for appellant.

Geoffrey E. Hobart, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for the United States.

Before BOUDIN, Circuit Judge,
BOWNES, Senior Circuit Judge, and
STAHL, Circuit Judge.

BOUDIN, Circuit Judge.

The sole issue on this appeal is whether the district court erred in denying Alexander Montanez the benefit in sentencing of the recently enacted "safety valve" provision which relates to mandatory minimum sentences. 18 U.S.C. § 3553(f); *see* U.S.S.G. § 5C1.2. We readily conclude that there was no error in this case. But in light of the far-reaching interpretation of the statute urged by the government, something more than a *per curiam* affirmance is required.

Montanez and three others were arrested in May 1994, after Montanez had aided in five drug sales to undercover agents. Montanez' role was limited to delivering the drugs and collecting the purchase money. He was charged with conspiring to distribute drugs, 21 U.S.C. § 846, and with five substantive counts of possession with intent to distribute, each relating to a different drug sale, 21 U.S.C. § 841. On January 26, 1995, Montanez pleaded guilty to all counts.

On June 2, 1995, the district court held a sentencing hearing. Montanez protested that the government's latest computation of drug quantity, if accepted, triggered a mandatory five-year minimum sentence under the statute, 21 U.S.C. § 841(b)(1)(B)(i). Montanez said that he had not been warned of this possibility at the time that he pleaded guilty. The district court continued the sentencing hearing to June 19, 1995, offering Montanez the opportunity to withdraw his plea.

Instead of withdrawing his plea, Montanez filed a supplemental memorandum on June 9, 1995, asking the court to apply the new safety valve provision of 18 U.S.C. § 3553(f).

That provision requires the district court to disregard the statutory mandatory minimum if the court finds at sentencing that five conditions have been met. Four, concededly met in this case, concern the defendant's prior history and the nature of the crime. The fifth finding is that:

> [N]ot later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

On the same date, June 9, 1995, Montanez' counsel sent the assistant United States attorney an eight-page letter setting forth what purported to be Montanez' "information" concerning the crimes charged in the case. The letter contained a good deal of detail about the crimes, but the detail came as no surprise to the prosecutor. With minor word changes, and not many of these, defense counsel's letter was drawn almost verbatim from an affidavit filed by one of the federal agents early in the case.

The government filed a response, arguing *inter alia* that the letter was plainly insufficient and pointing to various pieces of information that Montanez had not disclosed such as how he obtained the heroin involved in several of the five transactions, where it was stored, and who was the supplier. This information was not contained in the government affidavit or in Montanez' letter to the prosecutor. Montanez made no reply to this filing.

At the sentencing hearing on June 19, 1995, the district court ruled that it did not find that Montanez had truthfully provided to the government all information and evidence that he possessed. The court said that it thought that Congress had intended the safety valve for defendants who tried to cooperate by being debriefed by the government.

But, said the court, it would "cheerfully" have given Montanez the benefit of the safety valve if Montanez had just come into court "and said everything he knew and persuaded me that was everything he knew.... But he hasn't."

In due course, the district court imposed the mandatory minimum sentence and Montanez now appeals. He argues that no debriefing requirement exists and, in addition, that defense counsel's June 9 letter complied with the statutory requirement. The government argues that a debriefing is required but, in the alternative, says that the district court properly found that Montanez had not made the required disclosure in any form.

It is easy to understand why the government wants the statute construed to impose a requirement that a defendant offer himself to the prosecutor for a debriefing. If a defendant does have useful information, it can best be extracted and preserved in that setting. And a debriefing also puts the government in the best position to decide whether it thinks that the defendant is telling everything he knows and, if it believes otherwise, to argue to the court that the safety valve provision should not be applied.

■ But the issue before us is whether the statute *requires* the defendant to offer himself for debriefing as an automatic pre-condition in every case, and it is hard to locate such a requirement in the statute. All that Congress said is that the defendant be found by the time of the sentencing to have "truthfully provided to the Government" all the information and evidence that he has. Nothing in the statute, nor in any legislative history drawn to our attention, specifies the form or place or manner of the disclosure.

■ The government's best argument turns on the relationship of the safety valve statute to the preexisting provisions for a substantial assistance departure. From the outset, a departure below the statutory minimum sentence has been allowed where the prosecutor moves the court for such a departure on the ground that the defendant has

furnished substantial assistance to the government. 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1. The decision to move, with few qualifications, is committed to the prosecutor's discretion. *Carey v. United States*, 50 F.3d 1097, 1101 (1st Cir.1995).

As the Seventh Circuit compactly explained in a recent decision, Congress discovered that substantial assistance may commonly be available from highly culpable drug-ring organizers but often not from less culpable street dealers or "mules" who merely transport drugs. *United States v. Arrington*, 73 F.3d 144, 147–48 (7th Cir.1996). To cope with this situation, section 3553(f) was enacted in 1994. It rewards low level offenders who meet the other conditions specified (*e.g.*, non-violence, little criminal history) and who truthfully provide all of the information and evidence they have, even if it does not prove useful. *Id.* at 147.

Montanez seeks to contrast the preexisting substantial assistance statute with the new safety valve statute, arguing that the former is concerned with cooperation, but the latter only with culpability. While there are mechanical differences between the statutes, *see United States v. Acosta–Olivas*, 71 F.3d 375, 379 (10th Cir.1995), both values were probably of concern to Congress in drafting section 3553(f). In enacting the safety valve provision, we think Congress was aiming its leniency at low level defendants who did their best to *cooperate* to the extent of making full disclosure.[1] Such disclosure may prove to be of use even if it does not amount to "substantial assistance."

Section 3553(f) could easily have required a debriefing; certainly that would have provided a brighter line than merely to require that the defendant "truthfully provide [his information and evidence]" in some unspecified form. But the fact remains that Congress wrote the statute as it did. Courts can and do apply restrictive glosses on statutory language, but everything depends on the breadth of the linguistic leap and strength of the arguments for making it. Here, we think

1. *United States v. Wrenn*, 66 F.3d 1, 3 (1st Cir. 1995); *United States v. Ivester*, 75 F.3d 182, 184– 85 (4th Cir.1996); *Acosta–Olivas*, 71 F.3d at 379;

*United States v. Rodriguez*, 69 F.3d 136, 143 (7th Cir.1995).

that Congress' own formulation is adequate to achieve its ends.

Courts have thus far found it fairly easy to cull serious efforts at full disclosure from mere pretense. This court in *Wrenn*, 66 F.3d at 3, readily dismissed a defendant's claim that the necessary disclosure was achieved when the government covertly taped him in the course of the criminal venture; and another circuit only recently rejected a claim that a defendant had made the necessary disclosure through a routine interview with his probation officer. *United States v. Rodriguez*, 60 F.3d 193, 196 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 542, 133 L.Ed.2d 446 (1995).

As a practical matter, a defendant who declines to offer himself for a debriefing takes a very dangerous course. It is up to the defendant to persuade the district court that he has "truthfully provided" the required information and evidence to the government. *United States v. Flanagan*, 80 F.3d 143, 145–47 (5th Cir.1996). And a defendant who contents himself with a letter runs an obvious and profound risk: The government is perfectly free to point out the suspicious omissions at sentencing, and the district court is entitled to make a common sense judgment, just as the district judge did in this case.

Of course, nothing prevents a district court from deciding that it is unpersuaded of full disclosure, *cf. Rodriguez*, 60 F.3d at 195, but might be if the defendant submitted himself to a debriefing. Yet such a determination would rest in the hands of the judge, not the prosecutor. The possibility remains, however rare, that a defendant could make a disclosure without a debriefing (*e.g.*, by letter to the prosecutor) so truthful and so complete that no prosecutor could fairly suggest any gap or omission.

To suggest this course as a possibility is not to encourage it. A defendant whose only concern is to secure the benefit of the safety valve provision should be anxious for a debriefing. It offers an occasion to persuade the government that the defendant has made full disclosure and thus to win its "recommendation" for avoiding the mandatory minimum. U.S.S.G. § 5C1.2 comment (n.8). If

the government still opposes the departure, the defendant can say to the judge that the government had a chance to ask everything it wanted.

■ Defendants often have reasons, such as loyalty to a confederate or fear of retribution, for not wanting to make full disclosure. But full disclosure is the price that Congress has attached to relief under the statute, and the burden remains on the defendant to prove his entitlement. *Flanagan*, 80 F.3d at 146–47. Defendants will discover soon enough that there is little mileage in gambits designed to qualify the defendant for relief while avoiding full disclosure.

■ This case is a good illustration of a bad gambit. In theory full disclosure might exist where a defendant's letter recited back to the government, in virtually the government's own words, the information already possessed by the government and nothing more. But in practice this is hardly likely, especially where several different drug transactions and multiple players are involved. Here—merely to mention the most conspicuous omission—Montanez' letter does not disclose as to several of the transactions who provided him with the drugs he delivered.

It is enough that Montanez did not disclose information that he might reasonably be expected to possess, nor persuasively explain its absence. *See Wrenn*, 66 F.3d at 3. The failure to disclose is so patent in this case that no reason exists for extended discussion. Indeed, even on appeal Montanez offers no plausible reason why he could not have provided such information as the identity of each seller. The district court did not "clearly err" in finding that the fifth requirement was unsatisfied. *Rodriguez*, 69 F.3d at 144.

■ Montanez now argues that he ought to have been given an evidentiary hearing on the question whether he had made full disclosure. But he did not request such a hearing in the district court and that largely disposes of his claim. *United States v. Gertner*, 65 F.3d 963, 969 (1st Cir.1995). Even on appeal Montanez does not suggest what testimony he could have offered to show that he had made full disclosure. On the present facts, a

conclusory statement by Montanez on his own behalf would never have been credited.

Montanez might have made a different but related claim on appeal, namely, that the district judge should have given him a second chance to make full disclosure after finding that his June 9 letter was inadequate. But this claim would also be foreclosed by the failure to ask the district court for such an opportunity. We add, by way of warning, that defendants who make partial disclosure as an opening bid are engaging in a risky gamble. Here there was no serious effort at any disclosure.

*Affirmed.*