[NOT FOR PUBLICATION NOT TO BE CITED AS PRECEDENT] 

United States Court of Appeals
For the First Circuit

No. 98-1327

UNITED STATES OF AMERICA,

Appellee,

v.

ELIAS MUNOZ VAZQUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Stahl, Circuit Judge,

Aldrich and Campbell, Senior Circuit Judges.

Joseph S. Berman and Berman & Dowell on brief for appellant.
Geoffrey E. Hobart, Assistant United States Attorney, and
Donald K. Stern, United States Attorney, on brief for appellee.



February 3, 1999

Per Curiam. On October 17, 1997, Elias Munoz-Vazquez
(Vazquez) pled guilty in the U.S. District Court for the
District of Massachusetts to a single count of conspiring to
distribute methamphetamine in violation of 21 U.S.C.
841(a)(1) and 846. He was sentenced on March 5, 1998. 
Because the transaction in question involved more than one
kilogram of a methamphetamine mixture, Vazquez received a ten-
year mandatory minimum sentence pursuant to 21 U.S.C.
841(b)(1)(A)(viii), which he now challenges. We affirm.
Vazquez claims, first, that the district court should
have made an independent finding as to the drug quantity used
to support the imposition of his ten-year mandatory minimum
sentence. The methamphetamine mixture, originally in ten
packages weighing approximately one pound each, was seized
during a buy set up by law enforcement agents posing as drug
purchasers. After testing, the mixture weighed a total of
3,799.7 grams, or about 3.8 kilograms. The Sentencing
Guidelines prescribe a base offense level of 34 for offenses
involving "[a]t least 1.5 KG but less than 5 KG of
Methamphetamine." United States Sentencing Commission,
Guidelines Manual, 2D1.1(c)(3) (Nov. 1997). A base offense
level of 34 was therefore appropriate for Vazquez, and he
expressly agreed to that level in his plea agreement. In
addition or, in this case, instead statutory law requires
imposition of a ten-year mandatory minimum sentence for
offenses involving "1 kilogram or more of a mixture or
substance containing a detectable amount of methamphetamine,
its salts, isomers, or salts of its isomers." 21 U.S.C.
841(b)(1)(A)(viii). Regardless of his base offense level
under the Guidelines, then, Vazquez faced the ten-year
mandatory minimum, and he expressly acknowledged this both in
his plea agreement and during his plea colloquy.
Thus, the exposure that Vazquez acknowledged, both
under the Sentencing Guidelines and under the drug abuse
prevention and control statutes, was directly in accord with
the determined weight of the seized methamphetamine mixture. 
Vazquez never objected to the drug quantity determination per
se, but objected only to the Probation Department's
determination of a base offense level of 36 in its Presentence
Report. Vazquez argued that "[u]se of the base offense level
of 36 woould [sic] constitute a material breach of the plea
agreement by the Government" and requested "specific
performance of the plea agreement with respect to the setting
of the base offense level herein."
The Probation Department had determined the base
offense level of 36 based on the weight of pure
methamphetamine found in the seized mixture rather than on the
weight of the mixture itself. The calculation of the pure
methamphetamine weight was subject to doubt, however, because
of the manner in which the DEA chemist tested the drugs for
purity. He first tested all of the one-pound packages and
determined that each contained methamphetamine, then mixed the
contents of all ten packages together to form one pile. He
took samples from different parts of the pile, mixed them
together, and performed a single purity test. Testing the
purity and determining the weight of pure methamphetamine in
each of the ten packages would have yielded a more accurate
total weight of pure methamphetamine, but this was not done. 
So the government urged in its Sentencing Memorandum that the
district court use only the total weight of the
methamphetamine mixture to arrive at a base offense level of
34, the level agreed upon in the plea agreement and requested
in Vazquez's Presentence Report objections. The sentencing
judge did so, observing that "the proper calculation is the
one that the Government has done here on that." Vazquez then
acknowledged that, as to his base offense level objection,
"the relief requested there has been granted. So, of course,
that objection would not need a ruling."
Though he objected simply to the Probation
Department's base offense level of 36 and never expressly
challenged any of the lab results below, Vazquez now wishes to
call into question the determination as to the weight of the
methamphetamine mixture, urging that the district court should
have made an independent finding at an evidentiary hearing. 
However, we think that his actions at sentencing constitute a
waiver of his right to make such a challenge. The agreement
between Vazquez and the government on the proper base offense
level of 34, his acknowledgment, both in the plea agreement
and before the sentencing judge, that he faced a ten-year
mandatory minimum sentence, and the withdrawal of his
objection to the Presentence Report's base offense level of 36
once level 34 was substituted all belie Vazquez's assertions
that he simply failed to object to as opposed to
affirmatively waiving the government's assertions as to drug
quantity or that his objection to the Presentence Report's
base offense level determination and the government's
concession regarding inaccurate purity testing put the
methamphetamine mixture weight into question. Rather,
Vazquez's actions indicate to us the affirmative, albeit
unspoken, acknowledgment that the methamphetamine mixture
weighed at least 1.5 kilograms, the lower threshold for base
offense level 34, and was therefore above the 1 kilogram
threshold triggering application of the ten-year mandatory
minimum sentence. Vazquez made an "'intentional
relinquishment or abandonment'" of any right to challenge the
methamphetamine mixture weight. United States v. Olano, 507
U.S. 725, 733 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458,
464 (1938)). See also United States v. Montanez, 82 F.3d 520,
523 (1st Cir. 1996) (holding that failure to request an
evidentiary hearing in the district court "largely dispose[d]"
of defendant's claim on appeal that he should have been
granted one).
The authorities that Vazquez cites do not help him. 
In United States v. Valencia-Lucena, 988 F.2d 228, 232 (1st
Cir. 1993), the court observed that "[w]hen the quantity of
drugs used for the base offense level is in dispute, the
district court must make an independent finding at an
evidentiary hearing as to the reliability of the evidence." 
The crucial part of this recited rule is the requirement that
the quantity of drugs used to calculate the base offense level
be in dispute. As discussed above, there is no indication in
this record that the total drug mixture weight was in dispute
at all. Rather, the defendant successfully argued for a base
offense level that reflected a methamphetamine mixture weight
wholly consistent with a ten-year mandatory minimum sentence. 
Valencia-Lucena, therefore, does not apply. A second case
held that a requested evidentiary hearing should have been
granted. See United States v. Jiminez Martinez, 83 F.3d 488,
494 (1st Cir. 1996). Vazquez made no such request here, and
"that largely disposes of his claim." United States v.
Montanez, 82 F.3d 520, 523 (1st Cir. 1996). Jiminez Martinez,
then, is equally unhelpful.
Not to be turned away so easily, Vazquez also claims
that the district court should have applied the "safety valve"
provision in 18 U.S.C. 3553(f), allowing him to escape the
mandatory minimum sentence. We may dispose of this contention
more easily than we have the first. Section 5C1.2 of the
Sentencing Guidelines sets forth verbatim five criteria from
18 U.S.C. 3553(f) that must be met before the sentencing
court may grant relief from an otherwise applicable mandatory
minimum sentence. The only criterion still at issue at
sentencing was the requirement that "not later than the time
of the sentencing hearing, the defendant has truthfully
provided to the Government all information or evidence the
defendant has concerning the offense or offenses that were
part of the same course of conduct or of a common scheme or
plan." 18 U.S.C. 3553(f)(5); USSG 5C1.2(5).
Though Vazquez argued in his objections to the
Presentence Report that he had "fully revealed all facts known
by him relevant to his conduct" and was therefore entitled to
application of the safety valve, he acknowledged at sentencing
that he had not, in fact, fulfilled the requirement. The
lawyer for Vazquez's codefendant first made it clear that a
proffer had been made but was insufficient: "I would like to
advise the Court that, after debriefing with the Government,
the Government is not satisfied that we have met the burden
under 5C1.2 and, at this point, I would have to concur." 
Vazquez's lawyer echoed these sentiments: "as with Mr.
Bautista, the proffer that was required was not made and we
concur in that." Thus, Vazquez admitted he had not met the
requirements of USSG 5C1.2, thereby waiving his right to a
court finding that he did.
Vazquez argues that, because he indicated in his
objections to the Presentence Report his position that he was
entitled to application of the safety valve, the district
court should have ignored trial counsel's admission that the
condition was not met and "inquired further into the
circumstances of the proffer and determined whether any
possibility existed for application of the safety valve." 
This is not the law. The admission at sentencing was an
"intentional relinquishment or abandonment" of the right to a
court finding on whether Vazquez had satisfied the safety
valve criteria. The district court no longer had any reason
or responsibility to make such a determination.
We may dispose of Vazquez's third contention with even
greater ease. He claims that the district court should have
departed downward under the Sentencing Guidelines based on his
exceptional acceptance of responsibility and minimal
involvement in the drug transaction at issue. Whether such a
departure from the sentencing range would have been
appropriate is irrelevant since Vazquez in any event faced a
ten-year mandatory minimum sentence.
Affirmed.