USCA1 Opinion

 

[NOT FOR PUBLICATION NOT TO BE CITED AS PRECEDENT] 

 United States Court of Appeals
 For the First Circuit

No. 98-1327

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 ELIAS MUNOZ VAZQUEZ,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Douglas P. Woodlock, U.S. District Judge]

 Before

 Stahl, Circuit Judge,
 
 Aldrich and Campbell, Senior Circuit Judges.
 
 

 Joseph S. Berman and Berman & Dowell on brief for appellant.
 Geoffrey E. Hobart, Assistant United States Attorney, and
Donald K. Stern, United States Attorney, on brief for appellee.

 ___________________

 February 3, 1999
 ___________________
 Per Curiam. On October 17, 1997, Elias Munoz-Vazquez
 (Vazquez) pled guilty in the U.S. District Court for the
 District of Massachusetts to a single count of conspiring to
 distribute methamphetamine in violation of 21 U.S.C.
 841(a)(1) and 846. He was sentenced on March 5, 1998. 
 Because the transaction in question involved more than one
 kilogram of a methamphetamine mixture, Vazquez received a ten-
 year mandatory minimum sentence pursuant to 21 U.S.C.
 841(b)(1)(A)(viii), which he now challenges. We affirm.
 Vazquez claims, first, that the district court should
 have made an independent finding as to the drug quantity used
 to support the imposition of his ten-year mandatory minimum
 sentence. The methamphetamine mixture, originally in ten
 packages weighing approximately one pound each, was seized
 during a buy set up by law enforcement agents posing as drug
 purchasers. After testing, the mixture weighed a total of
 3,799.7 grams, or about 3.8 kilograms. The Sentencing
 Guidelines prescribe a base offense level of 34 for offenses
 involving "[a]t least 1.5 KG but less than 5 KG of
 Methamphetamine." United States Sentencing Commission,
 Guidelines Manual, 2D1.1(c)(3) (Nov. 1997). A base offense
 level of 34 was therefore appropriate for Vazquez, and he
 expressly agreed to that level in his plea agreement. In
 addition or, in this case, instead statutory law requires
 imposition of a ten-year mandatory minimum sentence for
 offenses involving "1 kilogram or more of a mixture or
 substance containing a detectable amount of methamphetamine,
 its salts, isomers, or salts of its isomers." 21 U.S.C.
 841(b)(1)(A)(viii). Regardless of his base offense level
 under the Guidelines, then, Vazquez faced the ten-year
 mandatory minimum, and he expressly acknowledged this both in
 his plea agreement and during his plea colloquy.
 Thus, the exposure that Vazquez acknowledged, both
 under the Sentencing Guidelines and under the drug abuse
 prevention and control statutes, was directly in accord with
 the determined weight of the seized methamphetamine mixture. 
 Vazquez never objected to the drug quantity determination per
 se, but objected only to the Probation Department's
 determination of a base offense level of 36 in its Presentence
 Report. Vazquez argued that "[u]se of the base offense level
 of 36 woould [sic] constitute a material breach of the plea
 agreement by the Government" and requested "specific
 performance of the plea agreement with respect to the setting
 of the base offense level herein."
 The Probation Department had determined the base
 offense level of 36 based on the weight of pure
 methamphetamine found in the seized mixture rather than on the
 weight of the mixture itself. The calculation of the pure
 methamphetamine weight was subject to doubt, however, because
 of the manner in which the DEA chemist tested the drugs for
 purity. He first tested all of the one-pound packages and
 determined that each contained methamphetamine, then mixed the
 contents of all ten packages together to form one pile. He
 took samples from different parts of the pile, mixed them
 together, and performed a single purity test. Testing the
 purity and determining the weight of pure methamphetamine in
 each of the ten packages would have yielded a more accurate
 total weight of pure methamphetamine, but this was not done. 
 So the government urged in its Sentencing Memorandum that the
 district court use only the total weight of the
 methamphetamine mixture to arrive at a base offense level of
 34, the level agreed upon in the plea agreement and requested
 in Vazquez's Presentence Report objections. The sentencing
 judge did so, observing that "the proper calculation is the
 one that the Government has done here on that." Vazquez then
 acknowledged that, as to his base offense level objection,
 "the relief requested there has been granted. So, of course,
 that objection would not need a ruling."
 Though he objected simply to the Probation
 Department's base offense level of 36 and never expressly
 challenged any of the lab results below, Vazquez now wishes to
 call into question the determination as to the weight of the
 methamphetamine mixture, urging that the district court should
 have made an independent finding at an evidentiary hearing. 
 However, we think that his actions at sentencing constitute a
 waiver of his right to make such a challenge. The agreement
 between Vazquez and the government on the proper base offense
 level of 34, his acknowledgment, both in the plea agreement
 and before the sentencing judge, that he faced a ten-year
 mandatory minimum sentence, and the withdrawal of his
 objection to the Presentence Report's base offense level of 36
 once level 34 was substituted all belie Vazquez's assertions
 that he simply failed to object to as opposed to
 affirmatively waiving the government's assertions as to drug
 quantity or that his objection to the Presentence Report's
 base offense level determination and the government's
 concession regarding inaccurate purity testing put the
 methamphetamine mixture weight into question. Rather,
 Vazquez's actions indicate to us the affirmative, albeit
 unspoken, acknowledgment that the methamphetamine mixture
 weighed at least 1.5 kilograms, the lower threshold for base
 offense level 34, and was therefore above the 1 kilogram
 threshold triggering application of the ten-year mandatory
 minimum sentence. Vazquez made an "'intentional
 relinquishment or abandonment'" of any right to challenge the
 methamphetamine mixture weight. United States v. Olano, 507
 U.S. 725, 733 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458,
 464 (1938)). See also United States v. Montanez, 82 F.3d 520,
 523 (1st Cir. 1996) (holding that failure to request an
 evidentiary hearing in the district court "largely dispose[d]"
 of defendant's claim on appeal that he should have been
 granted one).
 The authorities that Vazquez cites do not help him. 
 In United States v. Valencia-Lucena, 988 F.2d 228, 232 (1st
 Cir. 1993), the court observed that "[w]hen the quantity of
 drugs used for the base offense level is in dispute, the
 district court must make an independent finding at an
 evidentiary hearing as to the reliability of the evidence." 
 The crucial part of this recited rule is the requirement that
 the quantity of drugs used to calculate the base offense level
 be in dispute. As discussed above, there is no indication in
 this record that the total drug mixture weight was in dispute
 at all. Rather, the defendant successfully argued for a base
 offense level that reflected a methamphetamine mixture weight
 wholly consistent with a ten-year mandatory minimum sentence. 
 Valencia-Lucena, therefore, does not apply. A second case
 held that a requested evidentiary hearing should have been
 granted. See United States v. Jiminez Martinez, 83 F.3d 488,
 494 (1st Cir. 1996). Vazquez made no such request here, and
 "that largely disposes of his claim." United States v.
 Montanez, 82 F.3d 520, 523 (1st Cir. 1996). Jiminez Martinez,
 then, is equally unhelpful.
 Not to be turned away so easily, Vazquez also claims
 that the district court should have applied the "safety valve"
 provision in 18 U.S.C. 3553(f), allowing him to escape the
 mandatory minimum sentence. We may dispose of this contention
 more easily than we have the first. Section 5C1.2 of the
 Sentencing Guidelines sets forth verbatim five criteria from
 18 U.S.C. 3553(f) that must be met before the sentencing
 court may grant relief from an otherwise applicable mandatory
 minimum sentence. The only criterion still at issue at
 sentencing was the requirement that "not later than the time
 of the sentencing hearing, the defendant has truthfully
 provided to the Government all information or evidence the
 defendant has concerning the offense or offenses that were
 part of the same course of conduct or of a common scheme or
 plan." 18 U.S.C. 3553(f)(5); USSG 5C1.2(5).
 Though Vazquez argued in his objections to the
 Presentence Report that he had "fully revealed all facts known
 by him relevant to his conduct" and was therefore entitled to
 application of the safety valve, he acknowledged at sentencing
 that he had not, in fact, fulfilled the requirement. The
 lawyer for Vazquez's codefendant first made it clear that a
 proffer had been made but was insufficient: "I would like to
 advise the Court that, after debriefing with the Government,
 the Government is not satisfied that we have met the burden
 under 5C1.2 and, at this point, I would have to concur." 
 Vazquez's lawyer echoed these sentiments: "as with Mr.
 Bautista, the proffer that was required was not made and we
 concur in that." Thus, Vazquez admitted he had not met the
 requirements of USSG 5C1.2, thereby waiving his right to a
 court finding that he did.
 Vazquez argues that, because he indicated in his
 objections to the Presentence Report his position that he was
 entitled to application of the safety valve, the district
 court should have ignored trial counsel's admission that the
 condition was not met and "inquired further into the
 circumstances of the proffer and determined whether any
 possibility existed for application of the safety valve." 
 This is not the law. The admission at sentencing was an
 "intentional relinquishment or abandonment" of the right to a
 court finding on whether Vazquez had satisfied the safety
 valve criteria. The district court no longer had any reason
 or responsibility to make such a determination.
 We may dispose of Vazquez's third contention with even
 greater ease. He claims that the district court should have
 departed downward under the Sentencing Guidelines based on his
 exceptional acceptance of responsibility and minimal
 involvement in the drug transaction at issue. Whether such a
 departure from the sentencing range would have been
 appropriate is irrelevant since Vazquez in any event faced a
 ten-year mandatory minimum sentence.
 Affirmed.