UNITED STATES, Appellee,

v.

**Juan Carlos CADAVID, Defendant, Appellant.**

No. 97–2412.

United States Court of Appeals,
First Circuit.

Heard Aug. 5, 1999.
Decided Oct. 1, 1999.

Mark F. Itzkowitz, by appointment of the Court, for appellant.

Michael D. Ricciuti, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for appellee.

Before Torruella, Chief Judge, Lipez, Circuit Judge, and Fusté,* District Judge.

FUSTÉ, District Judge.

Appellant, Juan Carlos Cadavid, challenges the district court's calculation of his criminal sentence. For the reasons fully enunciated herein, we affirm the district court's determination.

## I.

### *Introduction*

On November 29, 1995, a grand jury indicted Cadavid and Albeiro Castrillón for a conspiracy to possess cocaine with intent to distribute from August 19, 1992, until September 4, 1992, in violation of 21 U.S.C. § 846 ("count one"); possession of cocaine with intent to distribute and aiding and abetting on August 29, 1992, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 ("count two"); Cadavid and Jesús Gutiérrez with a conspiracy to possess cocaine with intent to distribute from January 1, 1994, until September 30, 1994, ("count three"); possession and distribution of cocaine in or about January 1994 ("count four"); June 1994 ("count five"); between June and September 1994 ("count six"); and on September 15, 1994 ("count seven").

On May 27, 1997, pursuant to a plea agreement, Cadavid pled guilty to counts one through seven of the superseding indictment. Prior to his sentencing hearing, Cadavid filed objections to the Pre–Sentence Report ("PSR") which were followed

* Of the District of Puerto Rico, sitting by designation.

by sentencing memoranda filed by both Cadavid and the government.

On November 21, 1997, the district court sentenced Cadavid. At the hearing, the court ruled on objections to the PSR filed by Cadavid and rejected his request for a downward departure. The district court determined that Cadavid's total offense level was a 36 with a criminal history category ("CHC") of II. Therefore, the court found that the applicable U.S.S.G. range was 210 to 262 months. Accordingly, the court imposed a 228–month incarceration sentence, representing a partially concurrent disposition to an extant 108–month federal sentence Cadavid was currently serving, followed by 60 months of supervised release, and a special monetary assessment of three-hundred and fifty dollars.

## II.

### *The Plea Agreement*

The plea agreement specified that the quantity of narcotics attributable to Cadavid was between 50 and 150 kilograms of cocaine; that because he accepted responsibility under U.S.S.G. § 3E1.1(a), Cadavid was entitled to a two-point reduction in his base offense level; that because Cadavid had provided the government with information regarding his own involvement in the offense within the meaning of U.S.S.G. § 3E1.1(b), he was entitled to a one-point reduction in his base offense level under U.S.S.G. § 3E1.1(b)(1); and that the sentence the court imposed would run partially concurrently with a prior federal sentence Cadavid was serving in the Southern District of Florida pursuant to U.S.S.G. § 5G1.3(c). The agreement further stated that "there is no basis for departure."

The agreement also enunciated several disputed issues between the parties. First, the government explicitly reserved the right to argue for an upward role adjustment of no more than three points for Cadavid's role in the offense pursuant to U.S.S.G. § 3B1.1. Cadavid reserved the right to oppose that argument and to argue that no upward adjustment was appropriate. Second, Cadavid reserved his right to contend that his prior 1994 sentence was for conduct that formed part of the instant offense within the meaning of U.S.S.G. § 4A1.2(a)(1). The government reserved the right to dispute this point and oppose any incorrect application of the law. Finally, the government agreed not to argue that CHC III applies in this case. Pursuant to the plea agreement, Cadavid pled guilty on May 27, 1997.

## III.

### *The Presentence Report*

The Probation Department concluded, pursuant to U.S.S.G. § 2D1.1 and the quantity of cocaine involved in this case, that Cadavid's base offense level was 36. They further determined that an upward adjustment of three points was appropriate considering Cadavid's managerial or supervisory role in a criminal activity that involved more than five people. U.S.S.G. § 3B1.1(c). The Probation Department further credited Cadavid with a three-point downward adjustment for acceptance of criminal responsibility pursuant to U.S.S.G. § 3B1.1(b). Thus, Cadavid's adjusted base offense level, as calculated by the Probation Department, was 36.

In calculating Cadavid's criminal history, the Probation Department found five prior convictions: (1) a 1988 Florida state court conviction for disorderly intoxication to which Cadavid pled *nolo contendere* and received an adjudication withheld, a fine and was ordered to pay costs; (2) a 1990 Florida state court conviction for driving under the influence of alcohol ("DUI") for which Cadavid was found guilty, fined, sentenced to fifty hours of community service followed by six months probation and ordered to attend a DUI school; (3) a 1990 Florida state court conviction for battery to which Cadavid pled *nolo contendere* and received an adjudication withheld and an order to pay court costs; (4) a 1991 Flori-

da state court conviction for DUI[1] to which Cadavid pled *nolo contendere* and received an order to pay a fine;[2] and (5) the 1994 federal narcotics conviction. Based upon this history, the Probation Department determined that Cadavid had six criminal history points: one point for the 1990 DUI conviction pursuant to U.S.S.G. § 4A1.2(c); one point for the 1990 battery conviction pursuant to U.S.S.G. § 4A1.2(f); one point for the 1991 DUI conviction pursuant to U.S.S.G. § 4A1.2(c); and three points for the 1994 narcotics conviction pursuant to U.S.S.G. § 4A1.1(a). Therefore, the Probation Department originally calculated Cadavid's CHC to be III and the applicable sentencing range to be 235 to 293 months.

The Probation Department next noted that Cadavid was currently serving an undischarged 108-month federal sentence and that the court had the discretion to impose a concurrent, partially concurrent or consecutive sentence with the prior sentence. U.S.S.G. § 5G1.3(c) (1997).[3] The Probation Department then suggested a partially concurrent sentence and computed the additional consecutive component of punishment for Cadavid to be served after completion of his extant federal sentence. *See* U.S.S.G. § 5G1.3(c) nn. 3–5. In order to create a theoretical yardstick upon which to evaluate the proposed section 5G1.3(c) partial concurrence and the extent of any consecutive component of the sentence, the Probation Department consolidated the 1994 conviction and the instant offense by combining the amounts of cocaine from both offenses (73.995 kilograms, base offense level 36). Next, they added the three-point leadership enhancement, then subtracted three points for acceptance of responsibility. Since they consoli-

dated the two cases, the Probation Department ignored the three criminal history points from the 1994 narcotics conviction and used CHC II in its recommendation. The Probation Department determined that Cadavid's "theoretical guideline sentencing range" for both the 1994 and 1997 offenses was 210 to 262 months (offense level 33, CHC II). Thus, the Probation Department concluded that the appropriate incremental punishment pursuant to U.S.S.G. § 5G1.3(c) was to add 118 to 170 months to Cadavid's prior 108–month sentence.

## IV.

### *Cadavid's Objections*

Two months prior to sentencing, on September 17, 1997, Cadavid obtained new counsel. Cadavid then filed several objections to the PSR's criminal history calculation. Specifically, he alleged that: (1) the award of one criminal history point for the 1991 DUI conviction was erroneous because he was not represented by counsel; (2) the award of one criminal history point for the 1990 battery conviction was erroneous because a sentence of adjudication withheld fails to constitute a judicial determination of guilt; and (3) the award of three criminal history points for the 1994 narcotics case was erroneous because it constituted the "same course of conduct as alleged in the Indictment."

The Probation Department disagreed with each of Cadavid's objections finding that: (1) the 1991 conviction, even if no counsel was present, was for a misdemeanor and thus eligible to count pursuant to *Nichols v. United States*, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745

---

1. The court dismissed a separate charge of driving with a suspended license with a *nolle prosequi.*

2. Cadavid failed to pay the fine. In September 1991, he surrendered in open court and was sentenced to 10 days work release.

3. Section 5G1.3(c) provides:

(Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. 5G1.3(c).

(1994) (holding that, consistent with the Sixth and Fourteenth Amendments, uncounseled misdemeanor conviction is valid for use in enhancing punishment at subsequent conviction); (2) the 1990 "adjudication withheld" battery conviction was properly counted as a diversionary disposition under U.S.S.G. § 4A1.2(f); and (3) the 1994 conviction and this case were separate.

Cadavid then filed a sentencing memorandum raising, for the first time, the contention that he was entitled to the benefit of the "safety valve" pursuant to U.S.S.G. § 5C1.2(5). Cadavid also claimed that there were grounds for departure from the guidelines, despite the fact that the agreement provided that no such grounds existed. The five specific grounds he claimed included: (1) that he suffered a physical injury while in prison; (2) that he would agree to deportation; (3) that his criminal activity constituted aberrant behavior; (4) that his criminal history was overstated; and (5) that there were a combination of these factors.

Perceiving Cadavid's contentions for a downward departure as a breach of his pledge under the plea agreement not to seek such a departure, the government objected and withdrew from the agreement prior to sentencing. Nonetheless, the withdrawal was of no effect as the government maintained its original positions as stated in the agreement.

## V.

### Sentencing Hearing

At the sentencing hearing, the district court found that even if it were to accept Cadavid's challenge to the 1991 DUI conviction, the two points from the 1990 DUI conviction coupled with the battery conviction sufficed to place Cadavid in CHC II. The court endorsed the criminal history calculation of the PSR, grounded in U.S.S.G. 5G1.3(c), and the determination that Cadavid had a CHC of II. Cadavid objected, asserting that the battery convic-

tion should not count because an adjudication withheld fails to constitute a judicial determination or admission of guilt. The district court disagreed but went on to hold that, alternatively, even if it sustained each of Cadavid's objections, a CHC of I constituted a "gross understatement of the severity of this defendant's record." The court went on to note that:

> If I took the closest look possible in [Cadavid's] favor and came to the conclusion you were right, I've just said to you it would not make any difference in my sentence in this case, because if I did that, then I would plainly be forced to the conclusion in my mind, to do a fair sentencing adjudication, to determine that a CHC of "I" seriously under-represents the severity of this defendant's criminal record.

The district court proceeded to apply CHC II. The Memorandum of Sentencing Hearing and Report of Statement of Reasons further illuminates this point.

The court, citing the PSR, also imposed a three-level upward adjustment, adding:

> [T]his is not at all a situation in which Mr. Cadavid, who is before me now, functioned in the role comparable to a foreman. He was involved in planning and directing methods of operation by the other participants in the offense charged here and I find that the 3B1.1(b) adjustment of three points is entirely appropriate.

As to Cadavid's safety valve argument, the court concluded that his written proffers lacked both in veracity and completeness. The court, accordingly, disregarded the safety valve issue. The court further rejected Cadavid's contention that the 1994 conviction and the instant case were part of the same course of conduct and, therefore, the same offense. In rejecting this claim, the court relied upon the Probation Department's proposal enunciated in the PSR and consolidated the 1994 conviction with the current case while disregarding the three criminal history points arising from the 1994 conviction. The court con-

cluded that Cadavid's sentencing guideline range was 210 to 262 months, his total offense level was 36, and his CHC was II.

The court next considered Cadavid's claims for a downward departure. Following oral argument, the court rejected Cadavid's contentions that a downward departure was appropriate. The court examined each of Cadavid's claims and rejected them in turn.

In conclusion, the court imposed a sentence of 228 months upon Cadavid. Exercising its discretion under U.S.S.G. § 5G1.3(c), the court ordered that the sentence be partially concurrent with the 108–month sentence Cadavid was currently serving. *See* U.S.S.G. § 5G1.3(c) n. 5. The court obviously had considered the relevant guidelines factors in imposing a partially concurrent sentence.[4] Therefore, the court ordered Cadavid to serve 120 months beyond the completion of his sentence in the 1994 narcotics case.

## VI.

### *The Issues*

The following issues are now before this Court: (1) whether the district court committed plain error in assessing Cadavid a three-point upward adjustment under U.S.S.G. § 3B1.1; (2) whether the district court erred in calculating Cadavid's CHC; (3) whether the district court committed clear error in determining that Cadavid failed to meet the requirements of the "safety valve" provision in U.S.S.G. §§ 5C1.2 and 2D1.1(b)(4); and (4) whether this Court lacks jurisdiction to review the district court's discretionary refusal to depart downward from the otherwise applicable Guidelines sentencing range.

---

4. The factors are:
   the type and length of the prior undischarged sentence; the time served on the undischarged sentence and the time likely to be served before release; the fact that the prior undischarged sentence may have been imposed in state court rather than federal

## VII.

### *Cadavid's Role in the Offense*

Adopting the recommendation of the PSR, the district court increased Cadavid's base offense level by three points, concluding that he held a leadership or supervisory role over at least five other persons in the drug enterprise. Cadavid challenges the facts underlying the adjustment, specifically concerning the number of persons involved, and contends that the court clearly erred in its upward role in the offense adjustment.

The Guidelines provide for a three-level enhancement of a defendant's offense level if he acts as a manager or supervisor of a criminal enterprise that either includes five or more participants (including the defendant) or is "otherwise extensive." *See* U.S.S.G. § 3B1.1(b) (1997). This determination requires a two-step showing: (1) "evidence that a defendant, in committing the crime, exercised control over, or was otherwise responsible for overseeing the activities of, at least one other person," *United States v. Voccola,* 99 F.3d 37, 44 (1st Cir.1996); and (2) that the criminal scheme had five or more participants or was "otherwise extensive." U.S.S.G. § 3B1.1(b) (1997). The specific contours of the terms manager and supervisor are not elucidated. However, the guidelines offer direction to courts in making the distinction between a manager/supervisor and a leader/organizer. The factors identified are:

> [t]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the

---

court, or at a different time before the same or different federal court; and any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

U.S.S.G. § 5G1.3(c).

nature and scope of the illegal activity, and the degree of control and authority exercised over others. ·

U.S.S.G. § 3B1.1, n. 4 (1997).

■ We review role in the offense determinations, steeped in the facts of the case, under a clearly-erroneous standard. *See United States v. Fontana,* 50 F.3d 86, 87 (1st Cir.1995) (citing *United States v. Ovalle–Marquez,* 36 F.3d 212, 225 (1st Cir. 1994)). "[B]arring a mistake of law ... 'battles over a defendant's status ... will almost always be won or lost in the district court.'" *United States v. Conley,* 156 F.3d 78, 85 (1st Cir.1998) (quoting *United States v. Graciani,* 61 F.3d 70, 75 (1st Cir.1995)). Cadavid contends that the evidence presented does not clearly identify five separate persons and that the evidence does not support Cadavid's upward adjustment as a manager or supervisor. We disagree. The PSR concluded that there were seven members of the 1994 conspiracy: (1) Cadavid; (2) John Freddy Cadavid; (3) Jesús Gutiérrez; (4) Fabio Pulgarín; (5) Iván Ricuarte; (6) an unknown Hispanic male; and (7) a second unknown Hispanic male. Based upon this report and the record, the court concluded that there were more than five participants in the conspiracy. We find this ruling is not clearly erroneous. Even if, as Cadavid asserts, one were to concede that the two unknown Hispanic males were either the same person or another named member of the conspiracy, we still count five participants.

■ Furthermore, we find the record clearly supports the fact that Cadavid exercised control over the activities of at least one other person. We find the record to be replete with instances of Cadavid exercising a managerial or supervisory role. A few examples include: Cadavid's supervision, management and payment of Gutiérrez and Pulgarín in the January 1994 cocaine transaction; Cadavid's hiring of Pulgarín and Gutiérrez to transport cocaine from Massachusetts to New York; Castrillón's statements that he worked for Cadavid; and Cadavid identifying one of the unknown Hispanic males as his worker during a cocaine transaction in September 1994. Therefore, we conclude that the district court's role in the offense determination was not clearly erroneous.

## VIII.

### *Cadavid's Criminal History Category ("CHC")*

■ Cadavid argues that the court improperly calculated his CHC by erroneously including points in its tabulation. Specifically, he maintains that (1) the 1990 battery conviction which resulted in a judgment of "adjudication withheld" and where he was not assisted by counsel and (2) the 1991 DUI conviction which resulted in a work release sentence and under which he was not represented by counsel, should be excluded from the computation of his CHC. He further contends that the court failed to resolve this dispute and instead relied upon U.S.S.G. § 4A1.3 to upwardly depart.

We begin by examining the district court's calculation. The court stated that it was relying upon the PSR and Cadavid's entire record of past malfeasance to determine that CHC II was the proper category. The court swiftly agreed with the PSR's criminal history calculation. As an alternative basis, the court found that CHC I unjustly under-represented Cadavid's criminal past. *See* U.S.S.G. § 4A1.3 (1997).

We agree with the court's determination and the PSR's calculation that Cadavid's criminal history places him in CHC II. We find that combining Cadavid's criminal history points from his 1989 DUI conviction with his 1990 battery conviction places him in CHC II. Alternatively, we turn to the court's alternative departure ground.

■ We employ a tripartite test· to review a district court's departure decision on CHC under U.S.S.G. § 4A1.3:

First, we determine as a theoretical matter whether the stated ground for departure is permissible under the guidelines. If the ground is theoretically appropriate, we next examine whether it finds adequate factual support in the record. If so, we must probe the degree of the departure in order to verify its reasonableness.

*United States v. Dethlefs,* 123 F.3d 39, 43–44 (1st Cir.1997).

Section 4A1.3 of the guidelines states that "[i]f reliable information indicates that the CHC does not adequately reflect the seriousness of the defendant's past criminal conduct ... the court may consider imposing a sentence departure from the otherwise applicable guideline range." In this case, the district court concluded that "a CHC of 'I' seriously under-represent[ed] the severity of [Cadavid]'s criminal record." Thus, the reasons the court announced, nearly parroting the language of the guideline, are permissible and appropriate.

Next, we turn to whether there is an adequate factual foundation to support the departure. The district court expounded that even if it were to find merit in Cadavid's objections to the battery and DUI convictions, it would depart upward to CHC II. This, as discussed above, is clearly within the province of the court and supported by the record. Since 1988, Cadavid has been a frequent presence in our judicial system. He has two DUI convictions and one conviction each for disorderly intoxication, battery, and narcotics offenses. Moreover, at the time of sentencing, Cadavid was incarcerated, serving a 108–month federal sentence for narcotics trafficking. Given this relatively recent yet quite extensive illicit background, we find the district court correctly concluded that CHC I severely underrepresented Cadavid's past illegal conduct.

■■ Finally, we examine the reasonableness of the degree of the departure. "This third step involves what is quintessentially a judgment call." *United States*

*v. Diaz–Villafane,* 874 F.2d 43, 51 (1st Cir.1989). "Since the trial judge is in the trenches and is apt to be best informed about the offense and the offender, '[w]e will not lightly disturb decisions ... implicating degrees of departure.'" *United States v. Ocasio,* 914 F.2d 330, 336 (1st Cir.1990)(citing *Diaz–Villafane,* 874 F.2d at 50). However, judicial discretion in departure decisions is not unfettered. *See Ocasio,* 914 F.2d at 336. Congress has statutorily determined that circuit courts are to consider the factors ordinarily examined in sentencing decisions. *See* 18 U.S.C. § 3742(e)(3)(A). Thus, we "look not only to the particular circumstance warranting departure in the first place, but to the overall aggregate of known circumstances pertaining to the offense of conviction and to the offender who committed it." *Ocasio,* 914 F.2d at 337. In the instant case, we find that the degree of departure was reasonable given Cadavid's felonious background, which is replete with convictions. In addition, the district court, in effect, imposed a partially concurrent sentence pursuant to U.S.S.G. § 5G1.3(c). This amply reduced the actual time Cadavid will serve. The CHC calculation and resultant sentence in this case are proportionate to the criminal history.

Moreover, the issue of whether a judgment of "adjudication withheld" constitutes a predicate conviction under the guidelines, has been decided by this Court. In *United States v. Pierce,* 60 F.3d 886 (1st Cir.1995), we held that a prior withheld adjudication in which the defendant pled *nolo contendere* constituted a predicate conviction for purposes of the "career offender" guideline. U.S.S.G. § 4B1.1. Furthermore, U.S.S.G. § 4A1.2(f) provides that "[a] diversionary disposition resulting from a finding or admission of guilt, or a plea of *nolo contendere,* in a judicial proceeding is counted as a sentence under § 4A1.1(c) [the CHR Guideline] even if a conviction is not formally entered." The guidelines define a prior sentence as "any sentence previously imposed upon adjudi-

cation of guilt, whether by guilty plea, trial, or plea of *nolo contendere,* for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1) (1997). Thus, we find that the district court's calculation of criminal history points based upon Cadavid's 1990 battery conviction was correct.

Combining the criminal history point from Cadavid's 1990 battery conviction with the criminal history point to which Cadavid has conceded for DUI puts his CHC at II. Therefore, we need not explore whether the district court considered his uncounseled 1991 DUI conviction in calculating his CHC.

## IX.

### *"Safety Valve" Provision*

The next issue we analyze is whether the district court committed clear error in determining that Cadavid failed to meet the requirements of the "safety valve" provision in U.S.S.G. §§ 5C1.2 and 2D1.1(b)(4). In order to qualify for relief under the "safety valve" provision of the Sentencing Guidelines, a defendant must satisfy the following five criteria: (1) not have more than one criminal history point; (2) not have used violence or possessed a firearm during commission of the offense; (3) not have killed or seriously injured another person; (4) not have been a leader or manager in the offense; and (5) have truthfully provided the government with all information and evidence he possesses concerning the offense. *See* U.S.S.G. § 5C1.2 (1997). The burden is upon the defendant to convince the court that he meets the requirements. *See United States v. Montanez,* 82 F.3d 520, 523 (1st Cir.1996) (citing *United States v. Thompson,* 81 F.3d 877, 880 (9th Cir.1996) (stating that "it is the court, and not the Government, that determines whether a defendant qualifies for relief under § 5C1.2")). We review district court factual determinations of entitlement to relief under U.S.S.G. §§ 2D1.1(b)(4) and 5C1.2 for clear error. *See United States v. White,* 119 F.3d 70, 73 n. 6 (1st Cir.1997)

(citing *United States v. Miranda–Santiago,* 96 F.3d 517, 527 (1st Cir.1996)).

The district court found that Cadavid failed to meet two of the five requirements for "safety valve" qualification: Having no more than one criminal history point and being a supervisor or manager of the criminal enterprise. Cadavid challenges both findings and also asserts that the court's determination of the last criteria, the issue of whether defendant had truthfully provided the government with all information relating to the offense, was clouded by the earlier findings on the other criteria.

We find the district court was not clearly erroneous in concluding that Cadavid failed to meet the requisites under the Guidelines. First, as discussed previously, we find that Cadavid fails both the criminal history point and supervisor or manager requirements. Cadavid has failed to carry his burden in convincing the court that he qualifies for the safety valve provision. In this case, the government noted a number of deficiencies in Cadavid's written proffer and the court found that his submission "came nowhere near satisfying the requirements of the safety valve provision." The Judge continued, "I think he has withheld instead of being fully candid with the Court as well as with the Government in what he has filed in this case." "Full disclosure is the price that Congress has attached to relief under the statute." *Montanez,* 82 F.3d at 523 (citing *United States v. Flanagan,* 80 F.3d 143, 146–47 (5th Cir.1996)). Cadavid's submission fails to meet the standard.

## X.

### *Refusal to Downwardly Depart*

Our final determination is whether the district court improperly refused to depart downward from the otherwise applicable guideline sentencing range. The government asserts that the district court's refusal to downwardly depart is not reviewable.

Cadavid asserted five separate grounds allegedly justifying a downward departure: (1) a physical injury sustained while in prison; (2) his agreement to be deported; (3) that his criminal history constituted aberrant behavior; (4) that his criminal history was overstated; and (5) a catch-all totality of the circumstances category.

■ The rule of this Circuit is that "a criminal defendant cannot ground an appeal on a sentencing court's discretionary decision not to depart below the guideline sentencing range." *United States v. Robbio*, 186 F.3d 37, 44–45 (1st Cir.1999) (citing *United States v. Reeder*, 170 F.3d 93, 109 (1st Cir.1999)). Review of the sentencing hearing memorandum and transcript convince us that the district court fully comprehended its authority to depart downward in an appropriate case, but denied Cadavid's motion because of its perceived lack of merit. Because Cadavid challenges the district court's exercise of discretion not to depart downward, we do not have jurisdiction to entertain his argument. *See United States v. Field*, 39 F.3d 15, 21 (1st Cir.1994). Furthermore, the lion's share of Cadavid's current arguments for a downward departure is based on grounds he did not raise in the district court, a fact that further forecloses our consideration of those grounds. *See id.*

## XI.

### *Conclusion*

In accordance with the foregoing, we **AFFIRM** the district court's sentence calculation.