<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-2412

                         UNITED STATES,

                           Appellee,

                               v.

                      JUAN CARLOS CADAVID,

                     Defendant, Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

          [Hon. Robert E. Keeton, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                     Lipez, Circuit Judge,

                   and Fust, District Judge.

                     _____________________

   Mark F. Itzkowitz, by appointment of the Court, for appellant.
   Michael D. Ricciuti, Assistant United States Attorney, with
whom Donald K. Stern, United States Attorney, was on brief, for
appellee.

                      ____________________

                       October 1, 1999
                      ____________________

        FUST
, District Judge.  Appellant, Juan Carlos Cadavid,
challenges the district court's calculation of his criminal
sentence.  For the reasons fully enunciated herein, we affirm the
district court's determination.
                               I.
                          Introduction
        On November 29, 1995, a grand jury indicted Cadavid and
Albeiro Castrilln for a conspiracy to possess cocaine with intent
to distribute from August 19, 1992, until September 4, 1992, in
violation of 21 U.S.C.  846 ("count one"); possession of cocaine
with intent to distribute and aiding and abetting on August 29,
1992, in violation of 21 U.S.C.  841(a)(1) and 18 U.S.C.  2
("count two"); Cadavid and Jess Gutirrez with a conspiracy to
possess cocaine with intent to distribute from January 1, 1994,
until September 30, 1994, ("count three"); possession and
distribution of cocaine in or about January 1994 ("count four");
June 1994 ("count five"); between June and September 1994 ("count
six"); and on September 15, 1994 ("count seven").
        On May 27, 1997, pursuant to a plea agreement, Cadavid
pled guilty to counts one through seven of the superseding
indictment.  Prior to his sentencing hearing, Cadavid filed
objections to the Pre-Sentence Report ("PSR") which were followed
by sentencing memoranda filed by both Cadavid and the government.
        On November 21, 1997, the district court sentenced
Cadavid.  At the hearing, the court ruled on objections to the PSR
filed by Cadavid and rejected his request for a downward departure.  
The district court determined that Cadavid's total offense level
was a 36 with a criminal history category ("CHC") of II.  
Therefore, the court found that the applicable U.S.S.G. range was
210 to 262 months.  Accordingly, the court imposed a 228-month
incarceration sentence, representing a partially concurrent
disposition to an extant 108-month federal sentence Cadavid was
currently serving, followed by 60 months of supervised release, and
a special monetary assessment of three-hundred and fifty dollars.
                              II.
                       The Plea Agreement
        The plea agreement specified that the quantity of
narcotics attributable to Cadavid was between 50 and 150 kilograms
of cocaine; that because he accepted responsibility under U.S.S.G.
3E1.1(a), Cadavid was entitled to a two-point reduction in his
base offense level; that because Cadavid had provided the
government with information regarding his own involvement in the
offense within the meaning of U.S.S.G.  3E1.1(b), he was entitled
to a one-point reduction in his base offense level under U.S.S.G.
3E1.1(b)(1); and that the sentence the court imposed would run
partially concurrently with a prior federal sentence Cadavid was
serving in the Southern District of Florida pursuant to U.S.S.G.
5G1.3(c).  The agreement further stated that "there is no basis
for departure."
        The agreement also enunciated several disputed issues
between the parties.  First, the government explicitly reserved the
right to argue for an upward role adjustment of no more than three
points for Cadavid's role in the offense pursuant to U.S.S.G.
3B1.1.  Cadavid reserved the right to oppose that argument and to
argue that no upward adjustment was appropriate.  Second, Cadavid
reserved his right to contend that his prior 1994 sentence was for
conduct that formed part of the instant offense within the meaning
of U.S.S.G.  4A1.2(a)(1).  The government reserved the right to
dispute this point and oppose any incorrect application of the law.  
Finally, the government agreed not to argue that CHC III applies in
this case.  Pursuant to the plea agreement, Cadavid pled guilty on
May 27, 1997.
                              III.
                     The Presentence Report
        The Probation Department concluded, pursuant to U.S.S.G.
2D1.1 and the quantity of cocaine involved in this case, that
Cadavid's base offense level was 36.  They further determined that
an upward adjustment of three points was appropriate considering
Cadavid's managerial or supervisory role in a criminal activity
that involved more than five people. U.S.S.G.  3B1.1(c).  The
Probation Department further credited Cadavid with a three-point
downward adjustment for acceptance of criminal responsibility  
pursuant to U.S.S.G.  3B1.1(b).  Thus, Cadavid's adjusted base
offense level, as calculated by the Probation Department, was 36.
        In calculating Cadavid's criminal history, the Probation
Department found five prior convictions: (1) a 1988 Florida state
court conviction for disorderly intoxication to which Cadavid pled
nolo contendere and received an adjudication withheld, a fine and
was ordered to pay costs; (2) a 1990 Florida state court conviction
for driving under the influence of alcohol ("DUI") for which
Cadavid was found guilty, fined, sentenced to fifty hours of
community service followed by six months probation and ordered to
attend a DUI school; (3) a 1990 Florida state court conviction for
battery to which Cadavid pled nolo contendere and received an
adjudication withheld and an order to pay court costs; (4) a 1991
Florida state court conviction for DUI to which Cadavid pled nolo
contendere and received an order to pay a fine; and (5) the 1994
federal narcotics conviction.  Based upon this history, the
Probation Department determined that Cadavid had six criminal
history points: one point for the 1990 DUI conviction pursuant to
U.S.S.G.  4A1.2(c); one point for the 1990 battery conviction
pursuant to U.S.S.G.  4A1.2(f); one point for the 1991 DUI
conviction pursuant to U.S.S.G.  4A1.2(c); and three points for
the 1994 narcotics conviction pursuant to U.S.S.G.  4A1.1(a).  
Therefore, the Probation Department originally calculated Cadavid's
CHC to be III and the applicable sentencing range to be 235 to 293
months.
        The Probation Department next noted that Cadavid was
currently serving an undischarged 108-month federal sentence and
that the court had the discretion to impose a concurrent, partially
concurrent or consecutive sentence with the prior sentence.
U.S.S.G.  5G1.3(c) (1997).  The Probation Department then
suggested a partially concurrent sentence and computed the
additional consecutive component of punishment for Cadavid to be
served after completion of his extant federal sentence.  See
U.S.S.G.  5G1.3(c) nn. 3-5.  In order to create a theoretical
yardstick upon which to evaluate the proposed section 5G1.3(c)
partial concurrence and the extent of any consecutive component of
the sentence, the Probation Department consolidated the 1994
conviction and the instant offense by combining the amounts of
cocaine from both offenses (73.995 kilograms, base offense level
36).  Next, they added the three-point leadership enhancement, then
subtracted three points for acceptance of responsibility.  Since
they consolidated the two cases, the Probation Department ignored
the three criminal history points from the 1994 narcotics
conviction and used CHC II in its recommendation.  The Probation
Department determined that Cadavid's "theoretical guideline
sentencing range" for both the 1994 and 1997 offenses was 210 to
262 months (offense level 33, CHC II).  Thus, the Probation
Department concluded that the appropriate incremental punishment
pursuant to U.S.S.G.  5G1.3(c) was to add 118 to 170 months to
Cadavid's prior 108-month sentence.
                              IV.
                      Cadavid's Objections
        Two months prior to sentencing, on September 17, 1997,
Cadavid obtained new counsel.  Cadavid then filed several
objections to the PSR's criminal history calculation.  
Specifically, he alleged that: (1) the award of one criminal
history point for the 1991 DUI conviction was erroneous because he
was not represented by counsel; (2) the award of one criminal
history point for the 1990 battery conviction was erroneous because
a sentence of adjudication withheld fails to constitute a judicial
determination of guilt; and (3) the award of three criminal history
points for the 1994 narcotics case was erroneous because it
constituted the "same course of conduct as alleged in the
Indictment."
        The Probation Department disagreed with each of Cadavid's
objections finding that: (1) the 1991 conviction, even if no
counsel was present, was for a misdemeanor and thus eligible to
count pursuant to Nichols v. United States, 511 U.S. 738 (1994)
(holding that, consistent with the Sixth and Fourteenth Amendments,
uncounseled misdemeanor conviction is valid for use in enhancing
punishment at subsequent conviction); (2) the 1990 "adjudication
withheld" battery conviction was properly counted as a diversionary
disposition under U.S.S.G.  4A1.2(f); and (3) the 1994 conviction
and this case were separate.
        Cadavid then filed a sentencing memorandum raising, for
the first time, the contention that he was entitled to the benefit
of the "safety valve" pursuant to U.S.S.G.  5C1.2(5).  Cadavid
also claimed that there were grounds for departure from the
guidelines, despite the fact that the agreement provided that no
such grounds existed.  The five specific grounds he claimed
included: (1) that he suffered a physical injury while in prison;
(2) that he would agree to deportation; (3) that his criminal
activity constituted aberrant behavior; (4) that his criminal
history was overstated; and (5) that there were a combination of
these factors.
        Perceiving Cadavid's contentions for a downward departure
as a breach of his pledge under the plea agreement not to seek such
a departure, the government objected and withdrew from the
agreement prior to sentencing.  Nonetheless, the withdrawal was of
no effect as the government maintained its original positions as
stated in the agreement.
                               V.
                       Sentencing Hearing
        At the sentencing hearing, the district court found that
even if it were to accept Cadavid's challenge to the 1991 DUI
conviction, the two points from the 1990 DUI conviction coupled
with the battery conviction sufficed to place Cadavid in CHC II.  
The court endorsed the criminal history calculation of the PSR,
grounded in U.S.S.G. 5G1.3(c), and the determination that Cadavid
had a CHC of II.  Cadavid objected, asserting that the battery
conviction should not count because an adjudication withheld fails
to constitute a judicial determination or admission of guilt.  The
district court disagreed but went on to hold that, alternatively,
even if it sustained each of Cadavid's objections, a CHC of I
constituted a "gross understatement of the severity of this
defendant's record."  The court went on to note that:
                     If I took the closest look possible in
          [Cadavid's] favor and came to the
          conclusion you were right, I've just said
          to you it would not make any difference in
          my sentence in this case, because if I did
          that, then I would plainly be forced to
          the conclusion in my mind, to do a fair
          sentencing adjudication, to determine that
          a CHC of "I" seriously under-represents
          the severity of this defendant's criminal
          record.

The district court proceeded to apply CHC II.  The Memorandum of
Sentencing Hearing and Report of Statement of Reasons further
illuminates this point.
        The court, citing the PSR, also imposed a three-level
upward adjustment, adding:
                     [T]his is not at all a situation in which
          Mr. Cadavid, who is before me now,
          functioned in the role comparable to a
          foreman.  He was involved in planning and
          directing methods of operation by the
          other participants in the offense charged
          here and I find that the 3B1.1(b)
          adjustment of three points is entirely
          appropriate.

        As to Cadavid's safety valve argument, the court
concluded that his written proffers lacked both in veracity and
completeness.  The court, accordingly, disregarded the safety valve
issue.  The court further rejected Cadavid's contention that the
1994 conviction and the instant case were part of the same course
of conduct and, therefore, the same offense.  In rejecting this
claim, the court relied upon the Probation Department's proposal
enunciated in the PSR and consolidated the 1994 conviction with the
current case while disregarding the three criminal history points
arising from the 1994 conviction.  The court concluded that
Cadavid's sentencing guideline range was 210 to 262 months, his
total offense level was 36, and his CHC was II.
        The court next considered Cadavid's claims for a downward
departure.  Following oral argument, the court rejected Cadavid's
contentions that a downward departure was appropriate.  The court
examined each of Cadavid's claims and rejected them in turn.
        In conclusion, the court imposed a sentence of 228 months
upon Cadavid.  Exercising its discretion under U.S.S.G.  5G1.3(c),
the court ordered that the sentence be partially concurrent with
the 108-month sentence Cadavid was currently serving. See U.S.S.G.
5G1.3(c) n.5.  The court obviously had considered the relevant
guidelines factors in imposing a partially concurrent sentence.  
Therefore, the court ordered Cadavid to serve 120 months beyond the
completion of his sentence in the 1994 narcotics case.
                              VI.
                           The Issues
        The following issues are now before this Court: (1)
whether the district court committed plain error in assessing
Cadavid a three-point upward adjustment under U.S.S.G.  3B1.1; (2)
whether the district court erred in calculating Cadavid's CHC; (3)
whether the district court committed clear error in determining
that Cadavid failed to meet the requirements of the "safety valve"
provision in U.S.S.G.  5C1.2 and 2D1.1(b)(4); and (4) whether
this Court lacks jurisdiction to review the district court's
discretionary refusal to depart downward from the otherwise
applicable Guidelines sentencing range.
                              VII.
                 Cadavid's Role in the Offense
        Adopting the recommendation of the PSR, the district
court increased Cadavid's base offense level by three points,
concluding that he held a leadership or supervisory role over at
least five other persons in the drug enterprise.  Cadavid
challenges the facts underlying the adjustment, specifically
concerning the number of persons involved, and contends that the
court clearly erred in its upward role in the offense adjustment.
        The Guidelines provide for a three-level enhancement of
a defendant's offense level if he acts as a manager or supervisor
of a criminal enterprise that either includes five or more
participants (including the defendant) or is "otherwise extensive."
See U.S.S.G.   3B1.1(b) (1997).  This determination requires a
two-step showing: (1) "evidence that a defendant, in committing the
crime, exercised control over, or was otherwise responsible for
overseeing the activities of, at least one other person," United
States v. Voccola, 99 F.3d 37, 44 (1st Cir. 1996); and (2) that the
criminal scheme had five or more participants or was "otherwise
extensive."  U.S.S.G.  3B1.1(b) (1997).  The specific contours of
the terms manager and supervisor are not elucidated.  However, the
guidelines offer direction to courts in making the distinction
between a manager/supervisor and a leader/organizer.  The factors
identified are:
                     [t]he exercise of decision making
          authority, the nature of participation in
          the commission of the offense, the
          recruitment of accomplices, the claimed
          right to a larger share of the fruits of
          the crime, the degree of participation in
          planning or organizing the offense, the
          nature and scope of the illegal activity,
          and the degree of control and authority
          exercised over others.

U.S.S.G.  3B1.1, n.4 (1997).
        We review role in the offense determinations, steeped in
the facts of the case, under a clearly-erroneous standard.  See
United States v. Fontana, 50 F.3d 86, 87 (1st Cir. 1995) (citing
United States v. Ovalle-Mrquez, 36 F.3d 212, 225 (1st Cir. 1994)).  
"[B]arring a mistake of law . . . 'battles over a defendant's
status . . . will almost always be won or lost in the district
court.'"  United States v. Conley, 156 F.3d 78, 85 (1st Cir. 1998)
(quoting United States v. Graciani, 61 F.3d 70, 75 (1st Cir.
1995)).    Cadavid contends that the evidence presented does not
clearly identify five separate persons and that the evidence does
not support Cadavid's upward adjustment as a manager or supervisor.  
We disagree.  The PSR concluded that there were seven members of
the 1994 conspiracy: (1) Cadavid; (2) John Freddy Cadavid;
(3) Jess Gutirrez; (4) Fabio Pulgarn; (5) Ivn Ricuarte; (6) an
unknown Hispanic male; and (7) a second unknown Hispanic male.  
Based upon this report and the record, the court concluded that
there were more than five participants in the conspiracy.  We find
this ruling is not clearly erroneous.  Even if, as Cadavid asserts,
one were to concede that the two unknown Hispanic males were either
the same person or another named member of the conspiracy, we still
count five participants.
        Furthermore, we find the record clearly supports the fact
that Cadavid exercised control over the activities of at least one
other person.  We find the record to be replete with instances of
Cadavid exercising a managerial or supervisory role.  A few
examples include: Cadavid's supervision, management and payment of
Gutirrez and Pulgarn in the January 1994 cocaine transaction;
Cadavid's hiring of Pulgarn and Gutirrez to transport cocaine
from Massachusetts to New York; Castrilln's statements that he
worked for Cadavid; and Cadavid identifying one of the unknown
Hispanic males as his worker during a cocaine transaction in
September 1994.  Therefore, we conclude that the district court's
role in the offense determination was not clearly erroneous.
                             VIII.
          Cadavid's Criminal History Category ("CHC")
         Cadavid argues that the court improperly calculated his
CHC by erroneously including points in its tabulation.  
Specifically, he maintains that (1) the 1990 battery conviction
which resulted in a judgment of "adjudication withheld" and where
he was not assisted by counsel and (2) the 1991 DUI conviction
which resulted in a work release sentence and under which he was
not represented by counsel, should be excluded from the computation
of his CHC.  He further contends that the court failed to resolve
this dispute and instead relied upon U.S.S.G.  4A1.3 to upwardly
depart.
        We begin by examining the district court's calculation.  
The court stated that it was relying upon the PSR and Cadavid's
entire record of past malfeasance to determine that CHC II was the
proper category.  The court swiftly agreed with the PSR's criminal
history calculation.  As an alternative basis, the court found that
CHC I unjustly under-represented Cadavid's criminal past.  See
U.S.S.G.  4A1.3 (1997).   
        We agree with the court's determination and the PSR's
calculation that Cadavid's criminal history places him in CHC II.  
We find that combining Cadavid's criminal history points from his
1989 DUI conviction with his 1990 battery conviction places him in
CHC II.  Alternatively, we turn to the court's alternative
departure ground.
        We employ a tripartite test to review a district court's
departure decision on CHC under U.S.S.G.  4A1.3:
                     First, we determine as a theoretical
          matter whether the stated ground for
          departure is permissible under the
          guidelines.  If the ground is
          theoretically appropriate, we next examine
          whether it finds adequate factual support
          in the record.  If so, we must probe the
          degree of the departure in order to verify
          its reasonableness.

United States v. Dethelefs, 123 F.3d 39, 43-44 (1st Cir. 1997).    
        Section 4A1.3 of the guidelines states that "[i]f
reliable information indicates that the CHC does not adequately
reflect the seriousness of the defendant's past criminal conduct
. . . the court may consider imposing a sentence departure from the
otherwise applicable guideline range."  In this case, the district
court concluded that "a CHC of 'I' seriously under-represent[ed]
the severity of [Cadavid]'s criminal record."  Thus, the reasons
the court announced, nearly parroting the language of the
guideline, are permissible and appropriate.
        Next, we turn to whether there is an adequate factual
foundation to support the departure.  The district court expounded
that even if it were to find merit in Cadavid's objections to the
battery and DUI convictions, it would depart upward to CHC II.  
This, as discussed above, is clearly within the province of the
court and supported by the record.  Since 1988, Cadavid has been a
frequent presence in our judicial system.  He has two DUI
convictions and one conviction each for disorderly intoxication,
battery, and narcotics offenses.  Moreover, at the time of
sentencing, Cadavid was incarcerated, serving a 108-month federal  
sentence for narcotics trafficking.  Given this relatively recent
yet quite extensive illicit background, we find the district court
correctly concluded that CHC I severely under-represented Cadavid's
past illegal conduct.
        Finally, we examine the reasonableness of the degree of
the departure.  "This third step involves what is quintessentially
a judgment call."  United States v. Daz-Villafae, 874 F.2d 43, 51
(1st Cir. 1989).  "Since the trial judge is in the trenches and is
apt to be best informed about the offense and the offender, '[w]e
will not lightly disturb decisions . . . implicating degrees of
departure.'"  United States v. Ocasio, 914 F.2d 330, 336 (1st Cir.
1990)(citing Daz-Villafae, 874 F.2d at 50).  However, judicial
discretion in departure decisions is not unfettered.  See Ocasio,
914 F.2d at 336.  Congress has statutorily determined that circuit
courts are to consider the factors ordinarily examined in
sentencing decisions.  See 18 U.S.C.  3742(e)(3)(A).  Thus, we
"look not only to the particular circumstance warranting departure
in the first place, but to the overall aggregate of known
circumstances pertaining to the offense of conviction and to the
offender who committed it."  Ocasio, 914 F.2d at 337.  In the
instant case, we find that the degree of departure was reasonable
given Cadavid's felonious background, which is replete with
convictions.  In addition, the district court, in effect, imposed
a partially concurrent sentence pursuant to U.S.S.G.  5G1.3(c).  
This amply reduced the actual time Cadavid will serve.  The CHC
calculation and resultant sentence in this case are proportionate
to the criminal history.
        Moreover, the issue of whether a judgment of
"adjudication withheld" constitutes a predicate conviction under
the guidelines, has been decided by this Court.  In United States
v. Pierce, 60 F.3d 886 (1st Cir. 1995), we held that a prior
withheld adjudication in which the defendant pled nolo contendere
constituted a predicate conviction for purposes of the "career
offender" guideline.  U.S.S.G.  4B1.1.  Furthermore, U.S.S.G.
4A1.2(f) provides that "[a] diversionary disposition resulting
from a finding or admission of guilt, or a plea of nolo contendere,
in a judicial proceeding is counted as a sentence under  4A1.1(c)
[the CHR Guideline] even if a conviction is not formally entered."  
The guidelines define a prior sentence as "any sentence previously
imposed upon adjudication of guilt, whether by guilty plea, trial,
or plea of nolo contendere, for conduct not part of the instant
offense."  U.S.S.G.  4A1.2(a)(1) (1997).  Thus, we find that the
district court's calculation of criminal history points based upon
Cadavid's 1990 battery conviction was correct.
        Combining the criminal history point from Cadavid's 1990
battery conviction with the criminal history point to which Cadavid
has conceded for DUI puts his CHC at II.  Therefore, we need not
explore whether the district court considered his uncounseled 1991
DUI conviction in calculating his CHC.
                              IX.
                    "Safety Valve" Provision
        The next issue we analyze is whether the district court
committed clear error in determining that Cadavid failed to meet
the requirements of the "safety valve" provision in U.S.S.G.
5C1.2 and 2D1.1(b)(4).  In order to qualify for relief under the
"safety valve" provision of the Sentencing Guidelines, a defendant
must satisfy the following five criteria: (1) not have more than
one criminal history point; (2) not have used violence or possessed
a firearm during commission of the offense; (3) not have killed or
seriously injured another person; (4) not have been a leader or
manager in the offense; and (5) have truthfully provided the
government with all information and evidence he possesses
concerning the offense.  See U.S.S.G.  5C1.2 (1997).  The burden
is upon the defendant to convince the court that he meets the
requirements.  See United States v. Montaez, 82 F.3d 520, 523 (1st
Cir. 1996) (citing United States v. Thompson, 81 F.3d 877, 880 (9th
Cir. 1996) (stating that "it is the court, and not the Government,
that determines whether a defendant qualifies for relief under
5C1.2")).  We review district court factual determinations of
entitlement to relief under U.S.S.G.  2D1.1(b)(4) and 5C1.2 for
clear error.  See United States v. White, 119 F.3d 70, 73 n.6 (1st
Cir. 1997) (citing United States v. Miranda-Santiago, 96 F.3d 517,
527 (1st Cir. 1996)).
        The district court found that Cadavid failed to meet two
of the five requirements for "safety valve" qualification: Having
no more than one criminal history point and being a supervisor or
manager of the criminal enterprise.  Cadavid challenges both
findings and also asserts that the court's determination of the
last criteria, the issue of whether defendant had truthfully
provided the government with all information relating to the
offense, was clouded by the earlier findings on the other criteria.
        We find the district court was not clearly erroneous in
concluding that Cadavid failed to meet the requisites under the
Guidelines.  First, as discussed previously, we find that Cadavid
fails both the criminal history point and supervisor or manager
requirements.  Cadavid has failed to carry his burden in convincing
the court that he qualifies for the safety valve provision.  In
this case, the government noted a number of deficiencies in
Cadavid's written proffer and the court found that his submission
"came nowhere near satisfying the requirements of the safety valve
provision."  The Judge continued, "I think he has withheld instead
of being fully candid with the Court as well as with the Government
in what he has filed in this case."  "Full disclosure is the price
that Congress has attached to relief under the statute."  Montaez,
82 F.3d at 523 (citing United States v. Flanagan, 80 F.3d 143,
146-47 (5th Cir. 1996)).  Cadavid's submission fails to meet the
standard.
                               X.
                  Refusal to Downwardly Depart
        Our final determination is whether the district court
improperly refused to depart downward from the otherwise applicable
guideline sentencing range.  The government asserts that the
district court's refusal to downwardly depart is not reviewable.
        Cadavid asserted five separate grounds allegedly
justifying a downward departure: (1) a physical injury sustained
while in prison; (2) his agreement to be deported; (3) that his
criminal history constituted aberrant behavior; (4) that his
criminal history was overstated; and (5) a catch-all totality of
the circumstances category.
        The rule of this Circuit is that "a criminal defendant
cannot ground an appeal on a sentencing court's discretionary
decision not to depart below the guideline sentencing range."
United States v. Robbio, No. 98-1785, 1999 WL 551045 at *6 (1st
Cir. Aug. 2, 1999) (citing United States v. Reeder, 170 F.3d 93,
109 (1st Cir. 1999)).  Review of the sentencing hearing memorandum
and transcript convince us that the district court fully
comprehended its authority to depart downward in an appropriate
case, but denied Cadavid's motion because of its perceived lack of
merit.  Because Cadavid challenges the district court's exercise of
discretion not to depart downward, we do not have jurisdiction to
entertain his argument.  See United States v. Field, 39 F.3d 15, 21
(1st Cir. 1994).  Furthermore, the lion's share of Cadavid's
current arguments for a downward departure is based on grounds he
did not raise in the district court, a fact that further forecloses
our consideration of those grounds.  See id.

                              XI.
                           Conclusion
        In accordance with the foregoing, we AFFIRM the district
court's sentence calculation.

</body>

</html>