# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2761

_____

United States of America,         *
                       *

     Plaintiff - Appellee,    *
                       *   Appeal from the United States

v.                       *   District Court for the Western
                       *   District of Missouri.

Guillermo Perales Morones,   *
                       *

     Defendant - Appellant.   *

_____

Submitted:  February 9, 1999

Filed:  July 1, 1999

_____

Before WOLLMAN,[*] LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

LOKEN, Circuit Judge.

Guillermo Morones pleaded guilty to conspiracy to possess with intent to distribute more than one hundred kilograms of marijuana, an offense calling for a mandatory minimum sentence of five years in prison. See 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846. In 1994, Congress enacted a "safety valve" sentencing statute to mitigate the harsh impact of mandatory minimum sentences on less culpable offenders. Under the safety valve, a defendant is sentenced under the Guidelines, without regard

_____

[*]The Honorable Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

to an applicable mandatory minimum sentence, if the court finds that he satisfies five criteria. One is that, "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense." 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(5). Morones appeals the district court's[1] decision not to grant safety valve relief because he recanted his initial explanation of a cohort's role in the offense. We affirm.

The relevant facts can be briefly summarized. After arranging to ship almost nine hundred pounds of marijuana from El Paso to Kansas City and Chicago, Juan Franco-Leal flew to Kansas City to supervise the first delivery. Unknown to Franco-Leal, his deliverymen were confidential informants cooperating with Drug Enforcement Administration agents. One informant drove the marijuana to a truck stop in Kansas City, where Franco-Leal arrived in a car driven by Maximo Morales, followed by a van driven by Morones. The informant and Franco-Leal negotiated the delivery and then entered the van. Franco-Leal instructed Morones to hand $1,500 to the informant. Franco-Leal returned to the car driven by Morales, while Morones positioned the van next to the informant's truck. After Morones transferred the first box of marijuana to his van, all three were arrested.

When arrested, Morones agreed to cooperate and was immediately interviewed in Spanish by DEA Agent Jaime DelaRosa. Morones admitted his role in the offense -- helping Franco-Leal move boxes knowing they possibly contained illegal narcotics. DelaRosa also asked what role Morales played in the transaction. Agent DelaRosa's written report of the post-arrest interview relates the following:

---

[1]The HONORABLE D. BROOK BARTLETT, United States District Judge for the Western District of Missouri.

4. Guillermo MORONES stated that on September 7, 1997, he and a friend, Maximo MORALES-Lopez, picked up Juan FRANCO at the hotel [and] the three of them went to a Mexican restaurant. Juan FRANCO wanted to know if Guillermo MORONES was willing to help him out by moving some boxes. Guillermo MORONES stated that he agreed to help. . . . JUAN FRANCO told Guillermo MORONES that he would be paid fifteen hundred dollars. Guillermo MORONES stated that Maximo MORALES-Lopez asked to help Juan FRANCO. It was agreed that Maximo MORALES-Lopez would help and he and Guillermo MORONES would split the fifteen hundred dollars, each receiving seven-hundred and fifty dollars.

Based upon this interview, the government indicted Morales for participating in the marijuana transaction. Some months later, Morones advised that Morales was not involved in the marijuana delivery. The government then dismissed the indictment against Morales for lack of evidence.

After Morones pleaded guilty, the government opposed safety valve relief because he did not truthfully provide all information concerning the role of Morales in the offense. At sentencing, the district court heard evidence on the safety valve issue. Morones testified first. Admitting that Agent DelaRosa asked about Morales's involvement, Morones disagreed with three aspects of DelaRosa's interview report. First, Morones testified that Morales was away from the table at the Mexican restaurant whenever Morones and Franco-Leal discussed the marijuana delivery. Second, Morones testified that Morales never asked if he could help Franco-Leal. Third, Morones testified that he agreed to pay his friend Morales for providing transportation, not one-half of $1500 for helping deliver marijuana.

Testifying for the government, Agent DelaRosa confirmed the accuracy of his interview report. DelaRosa testified that Morones said Morales asked to help with the delivery, and that Morones agreed to split the $1500 with Morales. Based upon

Morones's statements, DelaRosa understood that Morales was present during the entire discussion at the Mexican restaurant. Morones never said during the interview that Morales was not involved in the marijuana transaction. The district court credited Agent DelaRosa's testimony. Had Morones asserted Morales's innocence during the interview, the court observed, Agent DelaRosa surely would have included that critical assertion in his interview report. The court found that Morones had not met his burden of proving that he truthfully provided all information to the government because:

> he's denying, in essence, that [DelaRosa's] report is truthful. Based on everything I've heard here today I believe the report is accurate and, therefore, his effort to say it isn't accurate does not persuade me that he is truthfully telling the government about what happened.

A defendant has the burden to prove he is entitled to safety valve relief by a preponderance of the evidence. To qualify, he must truthfully disclose all information concerning the crime, "including the identities and participation of others." United States v. Romo, 81 F.3d 84, 85-86 (8th Cir. 1996). As the First Circuit explained in United States v. Montanez, 82 F.3d 520, 523 (1st Cir. 1996):

> Defendants often have reasons, such as loyalty to a confederate or fear of retribution, for not wanting to make full disclosure. But full disclosure is the price that Congress has attached to relief under the statute, and the burden remains on the defendant to prove his entitlement.

Conceding this point, Morones argues first that he did truthfully provide all information because Agent DelaRosa misunderstood what Morones said during the post-arrest interview about Morales's involvement in the transaction. This is in essence an attack on the district court's credibility findings, which we review for clear error. See United States v. Tournier, 171 F.3d 645, 647 (8th Cir. 1999) (standard of review). Having carefully reviewed Agent DelaRosa's interview report and the testimony at the

sentencing hearing, we conclude the district court's finding that the interview report reflects what Morones told Agent DelaRosa was not clearly erroneous.

Alternatively, Morones argues he is entitled to safety valve relief because he told the full truth concerning Morales's involvement in the initial interview, regardless of his later recantation. He relies upon United States v. Shrestha, 86 F.3d 935 (9th Cir. 1996). In that case, a heroin courier initially admitted his knowing participation in a drug transaction and disclosed what he knew about others involved in the drug trafficking. But at trial and at sentencing defendant denied knowing he was transporting drugs prior to his arrest. The district court nonetheless granted safety valve relief, and the government appealed. The Ninth Circuit affirmed. It upheld the finding that defendant had not withheld other material information and concluded: "The fact that Shrestha denied his guilty knowledge at trial and at sentencing after his confession to the customs agents does not render him ineligible for the safety valve reduction as a matter of law." Id. at 940. Schrestha was a difficult case because it involved the need to apply the safety valve statute so as not to interfere with a defendant's right to testify at trial, a factor not involved in this case. Outside the trial context, the Ninth Circuit distinguished Shrestha in affirming the denial of safety valve relief to a defendant who recanted his initial identification of others as his drug sources in United States v. Lopez, 163 F.3d 1142, 1144 (9th Cir. 1998). See also United States v. Verners, 103 F.3d 108, 111 (10th Cir. 1996).

Leaving aside the trial testimony question posed by Shrestha, a defendant who recants or materially changes his story prior to sentencing can present a difficult safety valve issue for the sentencing court. On the one hand are cases where the defendant withholds material information or dissembles until the eve of sentencing, but is then completely truthful. Safety valve relief is not precluded simply because a tardy disclosure is less helpful to the government. See Tournier, 171 F.3d at 647-48. Although the defendant in this type of case may have told the government inconsistent stories, it serves the purposes of the safety valve to grant relief if the sentencing court

is persuaded that the last story is complete and truthful.[2]  On the other hand are cases where the defendant, like Morones, initially tells the government the whole truth but later recants.  This type of defendant is no more entitled to safety valve relief than the defendant who never discloses anything about the crime and its participants.  In this type of case, if the sentencing court finds that the initial recanted story was truthful, or that in recanting the defendant has been untruthful, the court's ultimate finding that defendant has not "truthfully provided to the Government all information and evidence the defendant has concerning the offense" is not clearly erroneous.

Here, the district court found that Morones was not truthful when he denied telling Agent DelaRosa about Morales's involvement in the offense, and therefore that Morones had not truthfully provided the government all evidence concerning the offense.  As those findings are not clearly erroneous, the judgment of the district court must be affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]Of course, a defendant who cynically waits to see what the government can prove at sentencing before telling all is unlikely to warrant safety valve relief.  See United States v. Long, 77 F.3d 1060 (8th Cir.), cert. denied, 519 U.S. 859 (1996).