# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2250

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff – Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| Victor Rojas Madrigal, | * | |
| | * | |
| Defendant – Appellee. | * | |

_____

Submitted: May 14, 2002
Filed: April 28, 2003

_____

Before WOLLMAN, BRIGHT, and JOHN R. GIBSON, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Victor Rojas Madrigal (Rojas), a first time drug offender, pleaded guilty to possession with intent to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), an offense calling for a mandatory minimum sentence of ten years in prison. Rojas sought to qualify for a sentence reduction under statutory safety valve provisions, by providing a full and complete disclosure to the district court.[1] See 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(5).

_____

[1]The Honorable Mark W. Bennett, Chief Judge, United States District Judge for the Northern District of Iowa.

The court rejected Rojas' proffer and continued the sentencing hearing. At the continued sentencing hearing, the court granted Rojas the benefit of the safety valve and determined other sentencing issues. The court sentenced Rojas to 108 months (nine years) within the guideline range of 87 to 108 months, or one year below the mandatory minimum sentence of ten years. The government appeals.

This case presents the following issue: when a federal district court judge for good cause and in the interests of justice continues a sentencing hearing, does that judge lose the discretion to grant an offender, who is qualified at the time of imposition of the sentence, a statutory safety valve deduction from a mandatory minimum sentence? We determine that the district court has that discretion. The statutory phrase for qualification for the safety valve is "not later than the time of sentencing hearing." 18 U.S.C. § 3553(f)(5). This provision does not deprive the district court in an appropriate case, such as this one, from continuing the hearing and in the court's discretion imposing a sentence below the mandatory minimum under the safety valve. Thus, we affirm the district court.

## I. BACKGROUND

### A. The Circumstances of the Crime

On March 31, 2000, an Iowa state trooper stopped a red Beretta because the trooper did not recognize the car's temporary license plate. The trooper determined that neither the driver, Eddie Moreno (Moreno), nor the passenger, Rojas, possessed valid drivers' licenses. Rojas, a Mexican, does not speak English. The trooper issued Moreno a ticket for driving on a suspended license. Suspecting that the car contained drugs, the trooper obtained consent from Moreno to search the car.

The trooper did not uncover any drugs during the roadside search, however, he continued to suspect that the car contained drugs.[2] After obtaining Moreno's consent to continue the search, the trooper had the car towed to a local service station. The trooper dropped Moreno and Rojas off at a nearby truck stop. The second search of the car resulted in the seizure of 4,409.3 grams of methamphetamine.

Authorities arrested Rojas on April 3, 2000, after Moreno and Rojas attempted to recover the car. On April 13, 2000, a grand jury indicted Moreno and Rojas on one count of possession with the intent to distribute more than 500 grams of methamphetamine. Rojas entered an Alford[3] plea on December 5, 2000. At the plea hearing, Rojas admitted to falsely telling the trooper that he had no knowledge of drugs in the car at the time of the stop.

Shortly after entering his plea, Rojas, with his counsel, spoke to an Assistant United States Attorney (AUSA) regarding his criminal conduct and other illegal activities. The AUSA explained that Rojas had to be completely truthful during the debriefing and warned him that the consequences of providing false information included possible perjury charges and possible nullification of favorable sentencing reductions. The government concedes that for the most part, Rojas provided complete and truthful information relating to the stop on March 31, 2000.

In addition, the government had information that Moreno had participated in an earlier drug exchange in early March 2000. The government had information that during the early March 2000 trip Moreno purchased a van to drive back to California, and that the van broke down on the way back causing Moreno to purchase the car, that the trooper later stopped on March 31, 2000. Rojas acknowledged that Moreno

---

[2]The trooper testified that he observed the car had a paint overspray and was missing screws, which led him to believe that drugs could be concealed in the car.

[3]North Carolina v. Alford, 400 U.S. 25 (1970).

had made an earlier trip from California to Minnesota, and that the van Moreno had purchased broke down, causing Moreno to purchase the car, but Rojas denied any participation in the trip.

Moreno also pleaded guilty on December 5, 2000, and debriefed with the government. Moreno explained that in early March 2000, Moreno, Rojas, and a third person flew from California to Minneapolis with methamphetamine strapped to their bodies. Moreno used the proceeds from the trip to purchase the van to drive back to California to make further drug trips. Apparently, Rojas flew back to California, while Moreno drove the van to Iowa, where it broke down. Moreno and Rojas were returning from California to Iowa to recover the van when the trooper stopped the car.

After receiving this information, the government contacted Rojas and his lawyer about the discrepancies in Moreno's and Rojas' stories regarding the early March 2000 trip. The government scheduled a second debriefing with Rojas.

Rojas asserts that when he arrived at the second debriefing, the government told him that it would resist any sentence reduction and would seek a high sentence, while Moreno might receive a lesser sentence for his cooperation. Rojas contends that after hearing this information he refused to speak with the government without a judge being present because he no longer trusted what the government said.[4]

B.     Initial Sentencing Hearing

_____

[4]At this point, Rojas may have had reasons to be wary; he had experienced multiple changes in counsel, reversal of a favorable suppression ruling, false accusations by the government that he had a criminal history in Arizona under the name of Victor Manuel Rosas, and erroneous notification by the government that Moreno was a fugitive.

The district court initiated the sentencing procedures on March 1, 2001, to determine contested sentencing issues relating to (1) acceptance of responsibility, U.S.S.G. § 3E1.1; (2) role reduction as a minor participant, U.S.S.G. § 3B1.2; and (3) various other grounds for downward departures.[5]

The government called as a witness Special Agent John Phillip Graham from the Iowa Division of Narcotics Enforcement. Agent Graham reviewed the December 5, 2000 debriefings with Moreno and Rojas. Graham also noted the discrepancies in their versions of the early March 2000 trip, notably Rojas' denial of participation in the trip. Graham also explained that he attempted to meet with Rojas for a second debriefing, which Rojas refused.

Rojas then testified about his personal background. Rojas began to explain the discrepancies in his story. The government objected to Rojas' testimony, especially his attempt to debrief before the court. A colloquy occurred where Rojas' lawyer stated that based on his reading of the statute and guidelines, he believed that the rules permitted the court to allow Rojas to provide complete and truthful disclosure at the sentencing hearing and still qualify for the safety valve reduction.[6] After

---

[5]Rojas sought further downward departures, including a departure based on mitigating circumstances such as his status as an illegal alien.

[6]The colloquy indicated that defendant's counsel believed that safety valve qualification could take place at the sentencing hearing:

THE COURT: Do you have a case that says you can force me to listen to the entire debriefing?

MR. MACTAGGART [counsel for the defendant]: May it please the Court, Your Honor, to inform the Court my client instructed me he would not speak with anyone without the judge present. He stated this to me at the time that I was with him prior to the second debriefing that we were going to do in Fort Dodge. He felt -- he communicated to me that he would trust no one except the judge, and I anticipated that the --

further discussion between the court and counsel about procedures in other cases in which the safety valve had been applied in similar circumstances at an adjourned sentencing hearing, the court stated:

> The only reason why I'd even allow it would be this claim which may or may not be true on the downward departure issue which I don't intend to depart downward on but about the language barrier and, you know, not understanding the system. And I'm fairly sensitive to that, and particularly where you have a situation where Mr. Rojas is saying he doesn't want to debrief because he doesn't trust anybody until he gets to me may come out of his experience in Mexico where you probably can't even trust anybody including the judge. And so that's the only thing that even pauses me to even consider it. If we didn't have the language, cultural barriers and problems, then I think sometimes -- well, I can't speak for anybody else in the courtroom but that we underestimate the magnitude of that -- I wouldn't even consider this procedure.

(Tr. at 38-39.)

----

> that his last chance for a favorable decision with regard to safety valve and the requirements under 5C1.2 was not later than at the time of sentencing. I did not anticipate that he would take much time with it, but I was anticipating pursuant to his firm request based on his lack of confidence in other things that had happened with regard to the government's conveyance to him of information that was inaccurate, he absolutely refused to say anything more, and I explained to him in excruciating detail the need for full disclosure, and he stated to me that he would not speak with any agent without being able to speak with the Court.
>     And so I did not anticipate that he would be prevented from, pursuant to 5, not later than at the time of sentencing, but I feel that perhaps if the Court were to communicate directly with Mr. Rojas that the Court will not --

(Tr. at 26-27.)

After further discussion and reflection, the court decided to continue the sentencing hearing. The court indicated that the government would have an opportunity to debrief Rojas, but that did not mean the court would grant the safety valve. Instead, the court explained its reasons for continuing the hearing:

> I just want some time to take a look at it. And then I want, you know, to hear all the arguments kind of whether he's deserving of it, not deserving of it. And I'll just give you the opportunity to do the fifth prong, but there are no promises that I'll actually grant the safety valve.
>     . . . .
>     I'll listen to all the arguments and make a decision about whether I think it's appropriate to grant the safety valve in this case . . . . But I just want to make sure that -- you know, it's important to do justice and also give the appearance of doing justice. And I think for people from other countries and different cultures who don't speak the language, we have to be very careful that we not only do the right thing but that we give the appearance that we're doing the right thing. And so I'm going to go ahead and continue the sentencing.

(Tr. at 43.) We observe also that the court declined any hearing on the safety valve determination or its application at the initial hearing.

C.    The Second Sentencing Hearing

At the second hearing, on April 25, 2001, the court summarized the proceedings to date:

> My understanding is at the time we continued this the only thing I had ruled on was the contested third point for acceptance of responsibility, and I'd given Mr. [Rojas] the third point, and so I think we're at a level 31, criminal history category 1, and we still have contested issues including the defendant's safety valve eligibility, the defendant's role, and the defendant's motion for downward departure.

(Tr. at 48.)  Both counsel agreed to this summary.

Between the first sentencing hearing and the second, the government had debriefed Rojas.  Rojas' version of the early March 2001 trip essentially was consistent with Moreno's version.  After hearing testimony from Agent Graham regarding the subsequent debriefing, the court determined that Rojas had truthfully provided the government with all information he had concerning his offense and that the safety valve would apply to the sentence.

The court also granted Rojas a two-level downward departure based on being a minor participant (U.S.S.G. § 3B1.2).  The court declined any additional downward departures.  As stated previously, the district court sentenced Rojas to 108 months (nine years) of imprisonment.  The government then brought this timely appeal.

II.    DISCUSSION

The government appeals, asserting that the district court erred in granting Rojas the safety valve reduction because he did not provide truthful information by the commencement of the sentencing hearing.

A.    Safety Valve

Congress passed the Mandatory Minium Sentencing Reform Act in order to remedy the sentencing inequity of allowing high-level defendants, whose greater participation in criminal activity resulted in their having more information, qualify for substantial assistance.  Low-level defendants whose coconspirators had already talked to the government often received longer sentences than these high-level defendants because even if the low-level defendants tell authorities everything that they know, they often have no new or useful information to trade and thus cannot qualify for substantial assistance departures.  The provision thus allows less

knowledgeable and less culpable defendants who fully speak the truth to the government to avoid the application of the often harsh statutory minimum sentences for low-level offenders with no, or a limited, prior criminal history. See United States v. Ramirez, 94 F.3d 1095, 1099 (7th Cir. 1996).

The parties do not dispute that Rojas qualifies for relief under 18 U.S.C. § 3553(f)(1)-(4).[7]  They also do not disagree, for purposes of this appeal, that Rojas

---

[7]The safety valve provision reads as follows:

**(f) Limitation on applicability of statutory minimums in certain cases.**–Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that–

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

18 U.S.C. § 3553(f)(1-4).

provided complete and truthful information. The disagreement centers on whether the district court erred in determining that Rojas timely provided the testimony as required by § 3553(f)(5):

> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).

The government would apply a rigid jurisdictional rule to any safety valve relief, requiring that the defendant provide truthful information prior to the beginning of the first sentencing hearing.[8] The government contends that the continuation of the hearing in this case and the further debriefing do not alter this basic requirement for safety valve relief. In support of its position, the government relies on cases from other circuits that have interpreted "not later than the time of the sentencing hearing"

---

[8]The government also argues that allowing a defendant to wait until the sentencing hearing does not support the public policy consideration of the statute, including waste of judicial resources. The safety valve is not precluded simply because a tardy disclosure is less helpful to the government. See United States v. Morones, 181 F.3d 888, 891 (8th Cir. 1999); see also United States v. Schreiber, 191 F.3d 103, 106 (2d Cir. 1999) ("the text provides no basis for distinguishing among defendants who make full disclosure immediately upon contact with the government, defendants who disclose piecemeal as the proceedings unfold, and defendants who wait for the statutory deadline by disclosing 'not later than' sentencing. Similarly, the text provides no basis for distinguishing between defendants who provide the authorities only with truthful information and those who provide false information before finally telling the truth.").

to mean "commencement." In opposition, Rojas essentially contends that the safety valve can apply to the hearing at which the defendant was actually sentenced.

B.    Analysis

The government cites a number of cases in which the federal courts of appeal have either rejected a safety valve qualification under 18 U.S.C. § 3553(f)(5) that occurs after commencement of a sentencing hearing, or have expressed an interpretation of § 3553(f)(5) that requires the offender to make a complete and proper disclosure of information before the commencement of the sentencing hearing. See United States v. Marin, 144 F.3d 1085, 1091 (7th Cir. 1998) ("the defendant must meet the safety valve's requirement of complete and truthful disclosure by the time of the commencement of the sentencing hearing"); see also United States v. Brenes, 250 F.3d 290, 293 (5th Cir. 2001) (adopting Marin); United States v. Brownlee, 204 F.3d 1302, 1305 (11th Cir. 2000) ("We follow those circuits who have held that lies and omissions do not, as a matter of law, disqualify a defendant from safety-valve relief so long as the defendant makes a complete and truthful proffer not later than the commencement of the sentencing hearing."); United States v. Schreiber, 191 F.3d 103, 107 (2d Cir. 1999) ("We agree with Marin that the deadline for compliance should be set at the time of the commencement of the sentencing hearing.").

In the principal cases, and indeed in almost every case applying this provision, the appellate courts examined the reasons given by the district court for continuing the hearing in determining that the district court had erred. For instance, in Marin, the district court continued the sentencing hearing numerous times and determined that the defendant still met the safety valve requirements. 144 F.3d at 1089, 1095 ("Here the sentencing hearing spanned four days as the district court tried to coax the truth out of Marin, who kept altering his version of events and changing his mind regarding whether to pursue the safety valve at all."). The Seventh Circuit reversed and remanded, concluding that the defendant must meet the safety valve requirements

-11-

by the time of the commencement of the sentencing hearing. Id. at 1091. The court explained that the purposes of the safety valve are frustrated where the defendant is allowed numerous opportunities to deliberately mislead the government. Id. at 1095.

In this case, the court did not provide Rojas with numerous opportunities to correct his first statement. Rather, the parties and the district court possessed various understandings of the timing requirement for the safety valve. Here the district court granted one, single continuance to allow the defendant another opportunity to debrief.

Similarly and contrary to the government's argument, Rojas' case is also distinguishable from the Fifth Circuit's application of the safety valve in Brenes. There, the Fifth Circuit concluded that the district court erred in allowing safety valve relief to a defendant who continued to lie about his participation at the sentencing hearing. 250 F.3d at 293-94. The district court continued the sentencing hearing for the government to meet with the defendant again, and then granted the safety valve. Id. at 292. With little discussion or explanation, the Fifth Circuit rejected the district court's application and adopted the commencement language in Marin. Id. at 293.

However, in Brownlee, the Eleventh Circuit vacated the district court's denial of safety valve relief. On the morning before his sentencing hearing, Brownlee contacted the prosecutor in his case and named his co-defendant as the source of the cocaine. 204 F.3d at 1303-04. The district court did not grant Brownlee safety valve relief. The Eleventh Circuit reversed saying the time for compliance with the safety valve is the commencement of the sentencing hearing, and since Brownlee disclosed the information prior to the beginning of his sentencing hearing he was entitled to the safety valve. Id. at 1305. Thus Brownlee does not address the factual circumstances of providing information after the start of the sentencing hearing.

If the statutory language of 18 U.S.C. § 3553(f)(5) is jurisdictional, a district court's reasons, faulty or not, become immaterial. Further, if the statutory language

-12-

of § 3553 were jurisdictional, the appellate decisions would have had no basis or cause to discuss the district court's reasons in assessing error.

Indeed, as noted by the Seventh Circuit in Marin, the language "not later than the time of the sentencing hearing" may be somewhat ambiguous. See 144 F.3d at 1092. Congress did not include the word "commencement," but rather used "time." The two words are not always synonymous. The term "time" in its primary sense refers to "a period during which something (as an action, process, or condition) exists or continues : an interval comprising a limited and continuous action, condition, or state of being : measured or measurable duration." WEBSTER'S THIRD NEW INTERNATIONAL UNABRIDGED DICTIONARY 2394 (1971). In a legal sense too, time does not mean a precise moment of beginning as contended by the government but is "a measure of duration." Black's Law Dictionary states, "A point in or period of duration at or during which something is alleged to have occurred." BLACK'S LAW DICTIONARY 1491 (7th ed. 1999). The dictionary definition of the term "time" militates against the government's position.

Of course, in the most typical cases the qualification for the safety valve should come before the commencement of the sentencing hearing in order to prevent the defendant from misleading the government or manipulating the sentence. See Schreiber, 191 F.3d at 107 ("a defendant who changes his or her story to match the government's evolving knowledge of the events risks irrevocably undermining his or her credibility"); United States v. Morones, 181 F.3d 888, 891 n.2 (8th Cir. 1999) ("a defendant who cynically waits to see what the government can prove at sentencing before telling all is unlikely to warrant safety valve relief").

But such is not the case here. None of the cases cited by the government has the sort of facts such as we have in this case, a case in which the district court should have some discretion and power to grant safety valve relief.

This court has never directly addressed whether a defendant can qualify for the safety valve after a continuation in the sentencing hearing. However, we have recognized a district court's discretion to continue a sentencing hearing. See United States v. Tauil-Hernandez, 88 F.3d 576, 580 (8th Cir. 1996) (holding that the district court did not abuse its discretion in granting a continuance to the government at defendant's sentencing hearing to allow the government to locate the author of a laboratory report).

In other contexts, we have addressed the requirements of the safety valve. In United States v. Long, 77 F.3d 1060 (8th Cir. 1986), we considered whether the district court abused its discretion in declining to grant safety valve relief to a defendant who waited until the sentencing hearing to provide completely truthful information. Id. at 1062.

We emphasized in Long that the defendant had actively misled the government. That is not the situation in the present case. Rojas' failure to initially disclose all information before the beginning of the sentencing hearing rested on a misunderstanding, not an intent to conceal the truth. In addition, United States v. Tournier, 171 F.3d 645 (8th Cir. 1999), supports the district court's ruling here. Tournier provided the government with some false information, but provided truthful information moments before the start of the sentencing hearing. In rejecting the government's opposition to the district court's grant of the safety valve, we said:

> In contrast [to Long], Tournier's full and truthful cooperation, though grudging and fitful, was completed before the sentencing hearing. The two cases may present only a difference in degree, not in kind, but subtle distinctions are important in fact finding, and they are for the sentencing court, not this court, to draw.

Id. at 648.

In United States v. Morones, we noted "a defendant who cynically waits to see what the government can prove at sentencing before telling all is <u>unlikely</u> to warrant safety valve relief." 181 F.3d at 891, n.2 (emphasis added). The use of "unlikely" would seem not to preclude all possibilities of receiving the safety valve after making a proffer after the start of a sentencing hearing.

We also note that other circuits have indicated a defendant may have an additional opportunity after the beginning of a sentencing hearing to qualify for safety valve relief. In United States v. Montanez, 82 F.3d 520 (1st Cir. 1996), the First Circuit intimated that under the right factual circumstances, defendants may request the district court give them an additional opportunity for disclosure. Id. at 524. Montanez opted to submit a letter, rather than a full debriefing, to the government prior to sentencing. Id. at 521. The district court found the letter inadequate and denied safety valve relief. On appeal, the First Circuit affirmed, but suggested that the defendant might have been more successful had he requested a "second chance" at sentencing to qualify for the safety valve:

> Montanez might have made a different but related claim on appeal, namely, that the district judge should have given him a second chance to make full disclosure after finding that his June 9 letter was inadequate. But this claim would also be foreclosed by the failure to ask the district court for such an opportunity. We add, by way of warning, that defendants who make partial disclosure as an opening bid are engaging in a risky gamble.

Id. at 524.

Further, the Tenth Circuit has suggested that a defendant, under the right circumstances, may also qualify for safety valve relief if the defendant comes clean at resentencing. See United States v. Acosta-Olivas, 71 F.3d 375, 380 (10th Cir. 1995). After police arrested Acosta-Olivas for drugs, he refused to cooperate with

-15-

the government; but he did write a letter describing his participation in the drug conspiracy. Id. at 377. Based on the letter, the district court granted Acosta-Olivas the safety valve. Id. The government appealed arguing that Acosta-Olivas did not qualify for the safety valve because his letter did not meet the full disclosure requirement of detailing his co-conspirator's participation in the crime. Id. The Tenth Circuit agreed, remanded for resentencing, and noted that "[i]f, at resentencing, the court makes a factual finding that, in deciding what information to disclose to the government, Mr. Acosta-Olivas relied upon the district court's interpretation of § 3553(f)(5), the court shall allow him the opportunity to comply with the statute as this court has interpreted it in this opinion." Id. at 380. Therefore, Acosta-Olivas suggests that the time for compliance with the statute may occur after the commencement of the sentencing hearing where the interests of justice so require.

Where the government's actions seem to prevent a defendant from making a full truthful debriefing, that action will not bar safety valve relief by a subsequent disclosure. See United States v. Schreiber, 191 F.3d 103, 108-09 (2d Cir. 1999). In Schreiber, the subsequent disclosure occurred prior to the sentencing hearing, but in rejecting the government's argument that the proffer was late the court said "the facts surrounding a debriefing, or the lack of a debriefing, become part of the total mix of evidence for the district court to consider in evaluating the completeness and truthfulness of the defendant's proffer." Id. at 108.

C.     Application to Rojas

We decide that the language of the statute, our case law, and the case law of other circuits support the conclusion that based on the particular circumstances of this case, the continued sentencing hearing does not deprive the district court of jurisdiction to grant safety valve relief, and the imposition of Rojas' sentence was not an abuse of discretion.

The district court acknowledged that the average defendant would not be entitled to a continuance. However, Rojas was not the average defendant. The court emphasized that Rojas' lack of understanding of the English language played an important role in its determination. Rojas' experience and familiarity of a different culture and government produced a mistrust of governmental authority. The court weighed this factor in its determination. The record also demonstrates that Rojas' counsel believed in good faith that the defendant could wait until sentencing to address the safety valve issue.

The district court determined in the interest of fairness and justice, that the sentencing hearing should be continued to allow all parties an opportunity to further review the circumstances of the case. In the interim, the government chose to further debrief Rojas.[9] After the debriefing, the government had ample time to check Rojas' story out, and prepare an argument, both factually and legally, against allowing Rojas safety valve relief. Finally, when the district court sentenced Rojas, it explained that a sentence at the upper end of the sentencing range was justified based on Rojas' delay in providing the testimony. This case is distinguishable from the cases cited by the government because Rojas did not mislead, stall and delay, nor did the district court coax the defendant into cooperation with the government. Instead, Rojas and his counsel mistakenly believed that the law allowed the proper disclosure to be made at the time of the sentencing hearing.

III.   CONCLUSION

The decision of the district court comes within the precise language and the spirit of the statute, which permits the district court to grant a low-level drug

---

[9]The government contends that its debriefing was not voluntary but that the district court ordered it to debrief Rojas. Our review of the record does not support such a contention.

offender, who is truthful, relief from the harshness of a mandatory minimum sentence. Accordingly, we affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.