# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-1549

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Cesar Alarcon-Garcia, | * |
| | * |
| Defendant - Appellant. | * |


_____

No. 02-1648

_____

Appeals from the United States
District Court for the
District of Minnesota.

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Daniel Bueno-Gardea, also known as | * |
| Abel Hidalgo-Escarcega, | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted:  December 11, 2002

Filed:  April 28, 2003

_____

Before McMILLIAN, JOHN R. GIBSON,  and BYE, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Cesar Alarcon-Garcia and Daniel Bueno-Gardea[1] pleaded guilty to charges of conspiracy to distribute marijuana and possession of marijuana with intent to distribute.  Since the amount of marijuana charged in the conspiracy exceeded one thousand kilograms, the district court[2] imposed a mandatory minimum sentence of ten years on each defendant.  On appeal, Alarcon-Garcia and Bueno-Gardea  both claim that the district court erred by not finding that they were entitled to the "safety valve" exception to these mandatory minimum sentences, which would have allowed the court to sentence them according to their sentencing guideline range.  We affirm.

I.

On May 22, 2001, DEA agents executed a search warrant at a house on 3608 Morgan Avenue North in Minneapolis, Minnesota.  At this house, the agents encountered three individuals: the defendants, Bueno-Gardea and Alarcon-Garcia, and a third person named David Armandariz-Chavez.  In the course of their search of the house, the agents discovered and seized approximately 1,652 pounds of marijuana, mostly wrapped in four pound "bricks," and $76,000 in cash, along with two scales and a large quantity of discarded wrapping materials identical to the

_____

[1]According to Bueno-Gardea's presentence report, his true name is Abel Hidalgo-Escarcega.  Since he was charged, convicted, and filed his appeal under the name Daniel Bueno-Gardea, we will refer to him by this name throughout this opinion.

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

packaging that encased the marijuana. They also found several notebooks that documented numerous marijuana sales and recorded proceeds from these sales in excess of one million dollars. Bueno-Gardea, Alarcon-Garcia, and Armandariz-Chavez were charged with conspiracy to distribute and possess with intent to distribute more than one thousand kilograms of marijuana[3] under 21 U.S.C. §§ 846 and 841(b)(1)(A) (2000) as well as possession with intent to distribute 1,650 pounds of marijuana under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (2000). Armandariz-Chavez was tried separately from the defendants and convicted of both counts. Both Bueno-Gardea and Alarcon-Garcia pleaded guilty to both counts without entering into a plea agreement with the government. The guideline range for both defendants, based on the calculations in their presentence reports, was 87 to 108 months. However, their conviction for the conspiracy to distribute more than one thousand kilograms of marijuana called for a ten year mandatory minimum sentence. See 21 U.S.C. § 841(b)(1)(A).

In order to avoid this minimum sentence and receive a sentence within the guideline range, Bueno-Gardea agreed to an interview with the government in which he would disclose information necessary to qualify for the safety valve under 18 U.S.C. § 3553(f) (2000) and Sentencing Guideline § 5C1.2. The information disclosed by Bueno-Gardea in this interview was summarized in a letter written by the prosecutor to the district court, in which the prosecutor urged the court not to grant safety valve relief because he believed Bueno-Gardea had not completely and truthfully disclosed all of the information concerning his crime. At sentencing, the judge agreed with the prosecutor that Bueno-Gardea's disclosure was not complete and truthful and refused to grant him safety valve relief. Consequently, Bueno-

---

[3]The quantity of marijuana in the conspiracy charge was calculated using the marijuana found in the house as well as an estimate of the marijuana already sold from this location. The estimate was based on the 408 empty wrappers found in the house. These wrappers were identical to the wrappers that wrapped the four pound "bricks" of marijuana that were seized during the search.

Gardea was sentenced to 120 months pursuant to the mandatory minimum set forth in § 841(b)(1)(A). Alarcon-Garcia, on the other hand, refused to be interviewed. At sentencing, he conceded that as a result he did not qualify for the safety valve, and likewise received the 120 month mandatory minimum sentence. Both defendants appeal these sentences.

II.

The safety valve provision in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 allows the district court to apply the guideline range in lieu of a mandatory minimum sentence prescribed by statute if the defendant satisfies five conditions. The first four conditions, which do not concern us in this case, address the criminal history of the defendant and the nature of the instant crime. At issue in this case is whether the defendants have satisfied the fifth condition, which requires a defendant to truthfully provide to the government "all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan" no later than the time of sentencing. 18 U.S.C. § 3553(f)(5). Although the safety valve requires the defendant to completely disclose all information relating to the crime, "the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement." Id.

Bueno-Gardea argues that the district court erred by finding that he did not make the complete and truthful disclosure necessary to receive the benefit of the safety valve. We review the district court's finding that Bueno-Gardea did not meet the requirements of § 3553(f) for clear error. United States v. Romo, 81 F.3d 84, 86 (8th Cir. 1996).

The district court's decision was based on Bueno-Gardea's proffer interview with the government as summarized in the prosecutor's letter to the court. At sentencing Bueno-Gardea conceded that his counsel was present at this interview and the letter accurately and completely described his admissions. In order to obtain the benefit of the safety valve, Bueno-Gardea bears the burden of showing that he gave the government truthful information about his crime at this interview. See Romo, 81 F.3d at 85-86.

We conclude that the district court did not clearly err in finding that Bueno-Gardea did not meet this burden. Bueno-Gardea was required to disclose the identities and participation of others involved in the crime. United States v. Morones, 181 F.3d 888, 890 (8th Cir. 1999). Bueno-Gardea claimed he knew David Armandariz-Chavez, and the latter was also present at 3608 Morgan with Bueno-Gardea at the time of their arrests. Nevertheless, Bueno-Gardea never implicated David Armandariz-Chavez in the sale of marijuana from the house at 3608 Morgan. Rather, he claimed that the only people involved in the sale of marijuana from this location were himself, his co-defendant Alarcon-Garcia, and a third individual named Miguel Ortega, whom Bueno-Gardea maintained was a different person from Armandariz-Chavez. As the prosecutor pointed out, the district court had recently presided over the trial at which Armandariz-Chavez was convicted of both the conspiracy and the possession charges. The district court was permitted to consider this evidence in evaluating the credibility of Bueno-Gardea's claim that he was not aware of Armandariz-Chavez's involvement in the conspiracy to distribute marijuana. See United States v. Velasquez, 141 F.3d 1280, 1283 (8th Cir. 1998). Based on the facts that Armandariz-Chavez had been convicted for his participation in the conspiracy and Bueno-Gardea and Armandariz-Chavez were both found at 3608 Morgan at the time of the search, the district court could conclude that Bueno-Gardea was in fact aware of Armandariz-Chavez's role in the conspiracy and doubt the truthfulness of Bueno-Gardea's proffer to the government.

Furthermore, Bueno-Gardea stated in his interview that Miguel Ortega was solely responsible for all the marijuana sales conducted out of 3608 Morgan. Bueno-Gardea also claimed that Ortega had allegedly left Minnesota for Mexico eight days before Bueno-Gardea and Alarcon-Garcia were arrested. However, the record of marijuana sales found at 3608 Morgan revealed that some sales had been conducted after the time Ortega allegedly left and before the arrests, clearly contradicting either Bueno-Gardea's statement that Ortega was solely responsible for drug sales or that Ortega had fled Minnesota. Considering this evidence that Bueno-Gardea misrepresented important facts in his safety valve proffer, the district court did not clearly err in finding that Bueno-Gardea's disclosure was not complete and truthful as required by § 3553(f) and § 5C1.2.

## III.

Defendant Alarcon-Garcia likewise argues that the district court erred in not finding him entitled to the safety valve. Unlike his codefendant, Alarcon-Garcia never submitted to an interview with the government to make the disclosure required by the safety valve provision. At sentencing, he conceded that since he did not make a proffer, he was not entitled to safety valve relief. Now, on appeal, he claims for the first time that his disclosure of information relating to his crime at the hearing on his guilty plea sufficed to fulfill the requirements for the application of the safety valve, and that the district court erred in not granting him relief under this provision at sentencing. Since he raises this claim for the first time on appeal, we review it only for plain error. Fed R. Crim. P. 52(b); United States v. Rios, 171 F.3d 565, 567 (8th Cir. 1999).

We conclude that the district court did not commit plain error by finding that Alarcon-Garcia did not qualify for the safety valve. Alarcon-Garcia correctly points out that neither § 3553(f) nor § 5C1.2 specifies a particular form, place, or manner for the disclosure required of a defendant seeking the benefit of the safety valve. United

States v. Dukes, 147 F.3d 1033, 1035 (8th Cir. 1998). Therefore, a defendant seeking safety valve relief is not obliged to submit to an interview with the government or make a formal safety valve proffer. Nevertheless, "a defendant who declines to offer himself for a debriefing takes a very dangerous course" because he ultimately bears the burden of persuading the district court that he has made a complete, truthful disclosure to the government. United States v. Montanez, 82 F.3d 520, 523 (1st Cir. 1996). The record shows that Alarcon-Garcia's disclosure of the basic facts of his crime did not meet this burden. He disclosed little more than the circumstances of the seizure of drugs from his house, the quantity of drugs in his possession, and his knowledge that he was a participant in a conspiracy to distribute these drugs. However, as we noted above, § 3553(f) and § 5C1.2 require the defendant to disclose the identities and participation of others involved in the crime. Morones, 181 F.3d at 890. Alarcon-Garcia did not disclose any information concerning the identity of his co-conspirators or the source of the supply of drugs involved in the operation at 3608 Morgan, information which the government and the district court could have reasonably expected him to have. Therefore, the district court did not commit plain error by refusing to grant him a safety valve reduction on the basis of his disclosure at the plea hearing.

We affirm the sentences imposed by the district court on Bueno-Gardea and Alarcon-Garcia.


A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-