# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-3858

_____

United States of America

*Plaintiff - Appellee*

v.

Adrian Oswaldo Rodriguez

*Defendant - Appellant*

_____

No. 16-1481

_____

United States of America

*Plaintiff - Appellee*

v.

Jose Cruz Ojeda

*Defendant - Appellant*

_____

No. 16-2768

_____

United States of America

*Plaintiff - Appellee*

v.

Javier Guadalupe Ramirez-Raya

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: December 12, 2016
Filed: March 30, 2017
[Unpublished]

_____

Before LOKEN, MURPHY, and KELLY, Circuit Judges.

_____

PER CURIAM.

Jose Cruz Ojeda, Adrian Oswaldo Rodriguez, and Javier Guadalupe Ramirez-Raya each pleaded guilty to one count of conspiracy to distribute 500 grams or more of methamphetamine pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. They were charged in an indictment involving 18 defendants who were alleged to be participants in a drug trafficking network in Minnesota, California, and Ohio. The district court[1] sentenced Ojeda to 240 months' imprisonment, Rodriguez to 120 months' imprisonment, and Ramirez-Raya to 144 months' imprisonment. The defendants appeal their sentences. After reviewing the arguments raised by each defendant, we affirm.

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

# I. Jose Cruz Ojeda

On October 15, 2014, Ojeda pleaded guilty to conspiring to distribute at least 500 grams of methamphetamine. As the factual basis for the plea, Ojeda agreed that the government could prove that in 2013 he entered into an agreement with others to traffic drugs in Minnesota, and he did in fact traffic in at least 80 pounds of methamphetamine intended for Minnesota, including large quantities that were seized from codefendants in several states. The presentence investigation report (PSR) described Ojeda as the leader of the drug trafficking organization. According to the PSR, Ojeda paid a coconspirator to recruit members to join the trafficking organization, planned coconspirators' trips to transport loads of cocaine and methamphetamine, instructed coconspirators to rent a storage unit to store drugs, directed coconspirators to deposit drug proceeds in cash into bank accounts, obtained vehicles from an auto dealership to transport drugs from California to Minnesota, and communicated with coconspirators about collecting drug debts and transporting and purchasing drugs.

The PSR calculated Ojeda's offense level at 41, including a four-level increase under USSG § 3B1.1(a) for being an organizer or leader and a two-level increase under USSG § 2D1.1(b)(5) for importing methamphetamine from Mexico to the United States. At sentencing, the district court overruled Ojeda's objection to the four-level increase for being a leader or organizer, but sustained his objection to the two-level increase for importing drugs from Mexico. With an offense level of 39 and a criminal history category of II, the applicable advisory guideline range was 292 to 365 months. Ojeda sought a downward variance to 120 months, arguing that he turned to drug trafficking to pay for his wife's medical treatment. The district court granted the variance in part and sentenced Ojeda to 240 months' imprisonment.

On appeal, Ojeda raises procedural and substantive challenges to his sentence. First, Ojeda argues that the district court failed to sufficiently articulate its analysis of the sentencing factors outlined in 18 U.S.C. § 3553(a). Because Ojeda did not object to the adequacy of the district court's explanation during his sentencing proceeding, we review for plain error. United States v. Merrell, 842 F.3d 577, 584 (8th Cir. 2016). "A district court is not required to recite the § 3553(a) factors mechanically or to 'make specific findings on the record' about each factor." Id. (quoting United States v. Fry, 792 F.3d 884, 891 (8th Cir. 2015)). Instead, "it simply must be clear from the record that the district court actually considered the § 3553(a) factors in determining the sentence." United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting United States v. Walking Eagle, 553 F.3d 654, 659 (8th Cir. 2009))

The district court heard extensive arguments from counsel and Ojeda regarding the proper sentence to impose, and it reviewed the PSR and the submissions of counsel. It granted a downward variance, but not to the extent sought by Ojeda in part because Ojeda was "a leader of a drug trafficking organization that had contacts all the way back down to Mexico and that just doesn't happen overnight." In its Statement of Reasons issued the same day as the sentencing hearing, the district court further explained its sentence: It stated that Ojeda's violent childhood, acceptance of responsibility, and lack of significant prior jail time supported a reduced sentence, but the seriousness of the offense, need to deter criminal conduct, and protection of the public led the court to conclude that only a small variance was appropriate. See United States v. Krzyzaniak, 702 F.3d 1082, 1085 (8th Cir. 2013) (relying on "[t]he court's subsequent written Statement of Reasons" to find that there was no plain error in its explanation of reasons for rejecting the defendant's request for a downward variance). We find no procedural error in the district court's consideration of the sentencing factors.

-4-

Next, Ojeda argues that the district court failed to consider several relevant factors that should have received significant weight, specifically his limited criminal history, his reason for engaging in drug trafficking, his role as an average participant in the drug trafficking organization, and the appropriate sentence to protect the public. "We review a challenge to the substantive reasonableness of a sentence for an abuse of discretion." United States v. Leonard, 785 F.3d 303, 306 (8th Cir. 2015) (quoting United States v. Luleff, 574 F.3d 566, 569 (8th Cir. 2009)). "A sentencing court abuses its discretion when it fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." Id. at 307 (quoting Luleff, 574 F.3d at 569). As described above, contrary to Ojeda's assertion, the district court did rely on many of the factors identified by Ojeda in reducing his sentence below the guideline range. As to Ojeda's specific contention that he was only an average participant in the drug trafficking organization, the district court rejected this argument. Ojeda does not argue that the district court erred in applying a four-level increase to his offense level pursuant to USSG § 3B1.1(a) for being an organizer or leader, and we can find no error in the district court's failure to rely on a contrary conclusion when deciding what sentence to impose. See United States v. Irlmeier, 750 F.3d 759, 764 (8th Cir. 2014) (defining "'organizer' and 'leader' broadly" to include those who "direct or enlist the aid of others" but who may "not be the only leader or organizer"). Given that the district court explicitly discussed the factors Ojeda raised and sentenced him "below the advisory guidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still further." United States v. Black, 670 F.3d 877, 882 (8th Cir. 2012) (quoting United States v. McKanry, 628 F.3d 1010, 1022 (8th Cir. 2011)). We find no such abuse of discretion here.[2]

_____

[2]To the extent Ojeda argues that he qualified for safety valve relief under 18 U.S.C. § 3553(f), he failed to raise this argument before the district court and thus we review for plain error. See United States v. Alarcon-Garcia, 327 F.3d 719, 722 (8th Cir. 2003). We conclude that the district court did not commit plain error in failing

Finally, Ojeda raises procedural and substantive challenges to an alleged unwarranted sentencing disparity between his sentence and those of his codefendants. He argues that the district court procedurally erred in failing to consider 18 U.S.C. § 3553(a)(6), which states that the court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Because Ojeda did not object at sentencing to the adequacy of the district court's consideration of § 3553(a)(6), we review for plain error. See United States v. Williams, 624 F.3d 889, 897 (8th Cir. 2010). We find no procedural error because the district court recited this factor in its Statement of Reasons, heard substantial argument from counsel regarding the sentences given to codefendants, and based its sentence in part on Ojeda setting up and leading the drug trafficking organization run by his codefendants. In addition, Ojeda contends that his sentence is substantively unreasonable because codefendants who were charged with the same crime received sentences ranging from 60 to 120 months. Ojeda ignores the quantity of drugs for which he was held responsible, and the fact that his codefendants were charged as average participants in the conspiracy, whereas he received an offense-level increase for being a leader. "[D]isparate sentences among dissimilar defendants are not unwarranted." Fry, 792 F.3d at 893 (emphasis omitted). The district court did not abuse its discretion in sentencing Ojeda to a longer term of imprisonment than codefendants who played smaller roles in the conspiracy.

---

to apply the safety valve. Ojeda did not meet his burden to show that he satisfied each safety valve requirement: He undisputedly had more than one criminal history point, 18 U.S.C. § 3553(f)(1), did not claim that he satisfied the full disclosure requirement, id. § 3553(f)(5), and failed to show he was not an organizer or leader of the conspiracy, id. § 3553(f)(4). See United States v. Alvarado–Rivera, 412 F.3d 942, 947 (8th Cir. 2005) (en banc) ("Defendants have the burden to show affirmatively that they have satisfied each requirement for the safety valve . . . .").

## II. Adrian Oswaldo Rodriguez

Like Ojeda, Rodriguez pleaded guilty to conspiring to distribute at least 500 grams of methamphetamine.  At his April 6, 2015, plea hearing, Rodriguez admitted that he came to an agreement with some of his codefendants to participate in the distribution of narcotics by transporting and delivering the drugs and by permitting drug proceeds to be deposited into his bank account.  According to the PSR, at his presentence interview, Rodriguez explained that a "known individual" offered him money to deposit cash into his bank accounts and later to withdraw the money and deliver it to specified locations.  He also admitted that in January 2014 he assisted in transporting and delivering 690 grams of heroin to Crystal, Minnesota.  The PSR calculated Rodriguez's offense level at 27, and because he had no criminal history, it placed him in criminal history category I for an advisory guideline range of 70 to 87 months.  Because Rodriguez was subject to a mandatory minimum sentence of 120 months, that became his adjusted advisory guideline range.

At his sentencing hearing, Rodriguez argued that he was eligible for a reduction in his advisory guideline range because he met the requirements of the safety valve.  See 18 U.S.C. § 3553(f).  Under that provision, the district court may impose a sentence below the mandatory minimum if it finds at sentencing that, *inter alia*, "the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  18 U.S.C. § 3553(f)(5).  The government argued that Rodriguez had not satisfied this safety valve requirement.  It stated that Rodriguez participated in a safety valve proffer with the government on September 17, 2015, but he twice refused to provide the name of the "known individual" who offered him money to conduct the bank account transfers.  According to the government, Rodriguez stated that he was not going to "answer any questions about anyone except for his own direct involvement." Rodriguez's counsel agreed that this was a "fair recitation of the facts," and that Rodriguez feared that

-7-

providing specific names would compromise the safety of his family. The district court found that Rodriguez had not met his burden to prove he was eligible for safety valve relief because he refused to answer the government's questions about the "known individual." After hearing arguments from counsel and Rodriguez, the district court sentenced Rodriguez to the mandatory minimum of 120 months.

Rodriguez appeals the district court's finding that he did not truthfully provide the government with all information and evidence he had concerning the offense. See 18 U.S.C. § 3553(f)(5). Rodriguez bears the burden of proving "that he qualifies for this relief, and we review for clear error the district court's findings about the completeness and truthfulness of a defendant's provision of information." United States v. Honea, 660 F.3d 318, 328 (8th Cir. 2011) (quoting United States v. Aguilera, 625 F.3d 482, 488 (8th Cir. 2010)). Rodriguez argues that he satisfied this element based on the information he provided at his plea hearing, and in his presentence interview, and by not disputing the facts in the PSR.[3] Although such information could potentially satisfy the defendant's burden to provide "complete and truthful information," here, the government identified specific information that Rodriguez refused to provide during a safety valve proffer—i.e., the name of the person who originally connected Rodriguez to the drug trafficking organization. United States v. Garcia, 675 F.3d 1091, 1095 (8th Cir. 2012) (finding no error in

[3]For the first time on appeal, Rodriguez contends that the full disclosure requirement of the safety valve is unconstitutional because it compels self incrimination in violation of the Fifth Amendment. As this court has not addressed the issue presented by Rodriguez, the district court cannot have plainly erred in not sua sponte finding that the disclosures required by 18 U.S.C. § 3553(f)(5) violated Rodriguez's Fifth Amendment rights. See United States v. Ristine, 335 F.3d 692, 695 (8th Cir. 2003) (concluding district court did not commit plain error, despite contrary precedent from another circuit, where "the current law concerning this issue is unsettled"). We do note, however, that other circuits have concluded that the safety valve does not implicate the right against self-incrimination. See United States v. Warren, 338 F.3d 258, 264 (3d Cir. 2003) (collecting cases).

denial of safety valve relief where "the government represented to the court that Garcia did not give a complete and accurate accounting of his role in the crime and gave examples of how Garcia was noncompliant"). Like in Garcia, Rodriguez's counsel "did not put forward any evidence to counter this assessment by the government," and in fact conceded that the government's description of the proffer was accurate and that Rodriguez was unwilling to provide names of specific individuals. Id. As a result, Rodriguez failed to meet his burden to show that he provided complete and truthful information. See United States v. Sanchez, 475 F.3d 978, 981 (8th Cir. 2007) ("Refusing to answer questions or respond to inquiries about relevant conduct is inconsistent with providing a complete and truthful account of that conduct."); United States v. Romo, 81 F.3d 84, 85 (8th Cir. 1996) (to receive safety valve relief, defendant is obligated to provide information about identities and participation of others involved in chain of distribution). We therefore find no error in the district court's conclusion that Rodriguez did not qualify for safety valve relief.[4]

### III. Javier Guadalupe Ramirez-Raya

Ramirez-Raya pleaded guilty to conspiring to distribute at least 500 grams of methamphetamine. The PSR calculated an offense level of 35 and a criminal history category of II based on two gross misdemeanor offenses Ramirez-Raya committed as a juvenile. At the sentencing hearing, the district court granted Ramirez-Raya's motion for a downward departure, finding that his criminal history was overstated and reducing his criminal history category to I. The adjusted guideline range was 168 to 210 months. Defense counsel argued for a variance to 120 months, the mandatory

---

[4]Rodriguez also argues that his 120-month sentence is substantively unreasonable. Where, as here, the government did not make a motion for substantial assistance and defendant does not qualify for safety valve relief, the district court lacked authority to reduce Rodriguez's sentence below the mandatory minimum. See United States v. Chacon, 330 F.3d 1065, 1066 (8th Cir. 2003).

minimum, based primarily on the abuse and violence Ramirez-Raya suffered as a child. The district court sentenced Ramirez-Raya to 144 months.

On appeal, Ramirez-Raya argues that the district court procedurally erred by failing to give any reasons to support its chosen sentence. As explained by the Supreme Court in Gall v. United States, 552 U.S. 38, 50 (2007), after settling on the appropriate sentence, a district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Because Ramirez-Raya failed to object on this ground at sentencing, we conduct a plain error review. See United States v. Chavarria-Ortiz, 828 F.3d 668, 670–71 (8th Cir. 2016). Even assuming that Ramirez-Raya demonstrated that the district court's explanation was inadequate, we cannot find plain error because he has not attempted to show "that a more detailed explanation would have resulted in a lighter sentence." Id. at 671. Without evidence of prejudice, we conclude there was no reversible error.

In addition, Ramirez-Raya argues that his sentence is substantively unreasonable because the district court did not consider several of the arguments he made at sentencing, specifically his lack of guidance during childhood, the substantial time he spent in foster care, his violent and abusive childhood, his limited criminal history, and his financial reasons for becoming involved with the conspiracy. We review the substantive reasonableness of a sentence "under a deferential abuse-of-discretion standard." Gall, 552 U.S. at 41. The district court sentenced Ramirez-Raya to 144 months—a term 24 months lower than the low end of his advisory guideline range. Where the district court imposed a below-Guidelines sentence, it is "nearly inconceivable" that such a sentence is substantively unreasonable. See United States v. Lazarski, 560 F.3d 731, 733 (8th Cir. 2009). We conclude that the sentence imposed here was not unreasonably high.

## IV. Conclusion

The judgments are affirmed.

_____